[Sac. No. 19.   In Bank.—July 12, 1895.]

GEORGE A. TEBBE, RESPONDENT, *v.* CLARENCE S.
SMITH, APPELLANT.

ELECTIONS — CONTEST — BALLOTS, WHEN BEST EVIDENCE.—In an election
contest the ballots are the best evidence of the manner in which the
electors have voted only when their integrity can be satisfactorily estab-
lished.

PRIMA FACIE CORRECTNESS OF OFFICIAL CANVASS—BURDEN OF PROOF.—
One who relies upon overcoming the *prima facie* correctness of the
official canvass, by a resort to the ballots, must first show that the bal-
lots, as presented to the court, are intact and genuine, and, where a
mode of preservation is enjoined by the statute, proof must be made of
a substantial compliance with the requirements of that mode.

ID.—DIRECTORY REQUIREMENTS — PRESERVATION OF BALLOTS.— The re-
quirements of the statute as to the mode of preservation of ballots are
construed as directory merely, the object looked to being the preserva-

| | |
|---|---|
| 108 | 101 |
| d111 | 422 |
| 108 | 101 |
| 114 | 309 |
| 108 | 101 |
| 119 | 632 |
| 108 | 191 |
| 120 | 653 |
| 120 | 654 |
| 108 | 101 |
| 126 | 283 |
| 108 | 101 |
| 133 | 345 |
| 108 | 101 |
| 134 | 153 |
| 108 | 101 |
| 136 | 271 |
| 136 | 277 |
| 136 | 402 |
| 108 | 101 |
| e141 | 273 |
| 141 | 414 |
| 108 | 101 |
| e143 | 339 |
| 108 | 101 |
| e145 | 332 |
| 145 | 333 |
| 145 | 337 |

tion inviolate of the ballots, and, if this is established, they cannot be rejected merely because the precise mode of reaching it has not been followed.

Id.—Shifting of Burden of Proof.— When a substantial compliance with the provisions of the statute has been shown, the burden of proof shifts to the person contesting the use of the ballots to establish that they have in fact been tampered with, or that they have been exposed under such circumstances that a violation of them might have taken place, but the law cannot guard against a mere possibility, and the ballots cannot be rejected as evidence upon a mere naked showing that it was possible for one to have molested them.

Id.—Question of Fact.—It is a matter to be determined in the first instance by the jury or trial judge as to whether the ballots were tampered with or improperly exposed, and when the ballots have been admitted, after clear and satisfactory evidence of their integrity, the appellate court will not disturb the ruling, when not well satisfied that the evidence does not warrant it.

Id.—Marking of Ballots—Mandatory Statute—Liberal Construction—Placing Cross after Name.—The statutory provisions as to the marking of ballots are in their nature mandatory; but all statutes tending to limit the citizen in the exercise of the right of suffrage should be liberally construed in his favor, and in our statutes there is no mandatory provision requiring the voter to mark the cross in the square to the right of the candidate's name, but he is required only to mark a cross after the name of the person or persons for whom he intends to vote, and when he has done so he has complied with the mandatory provisions of the law, and it is not an essential prerequisite to the marking of a legal ballot that the marking be done in the square to the right of the name.

Id.—Ulterior Purpose of Marking—Construction of Statute.—Section 1215 of the Political Code, in forbidding marks which may serve to distinguish the ballots, does not include the cross legally placed upon the ballot, and, when a legal mark is placed upon the ballot in a legal place, whether at the right of the name or in the square, the ballot cannot be rejected because the mark as placed may serve some ulterior purpose to distinguish the ballot.

Id.—Void Ballot—Mark without Lawful Right—Remedy of Voter. Where a letter is written in pencil in a blank space left for the initial of a name, though it may have been the intention of the voter to write a name, and he may have abandoned his intent after setting down an initial letter; yet the mark being one having no lawful right on the ballot, and one which could serve as a distinguishing mark, it renders the ballot void, his only remedy, having improperly marked the ballot, being to call for the issuance to him of a fresh ticket.

Id.—Void Precinct Vote — Improper Keeping of Polls.—Where the polls at an election precinct were not opened until nearly 10 o'clock, and an adjournment was made at noon, and the ballot-box was taken by one of the election officers and left on the table while eating dinner, and the ballots and other election materials were left in the poll-room in the presence of bystanders during the adjournment, the provisions of the law are substantially violated and the vote of the precinct is void, and the votes cast thereat should be rejected.

ID.—NONCOMPLIANCE WITH PROVISIONS FOR HOLDING ELECTION—FRAUD
AND INJURY IMMATERIAL.—There must be a reasonable observance of
all the prescribed conditions for the holding of an election, including
not only mandatory provisions, but also the essential terms of directory
provisions, and it is not sufficient to show that, from the failure sub-
stantially to comply with the statute, no fraud or injury was involved
or resulted in the individual case.

ID.—RULE AS TO DIRECTORY PROVISIONS.—The rule that departure from
directory provisions will not render an election void in the absence of a
showing that the result of the election has been changed, or the rights
of the voters injuriously affected, applies only to minor and unsubstan-
tial departures from directory provisions; but there may be such radical
omissions and failures to comply with the essential terms of directory
provisions as to lead to the conclusive presumption that injury must have
followed.

ID.—BALLOTS OF PRECINCT IMPROPERLY MARKED—PRESUMPTION OF OFFI-
CIAL DUTY—REJECTION OF BALLOTS.—Where, upon all the ballots cast
in a precinct, a name appeared written in the blank space under the
office of justice of the peace, which was done by the same person, and
there was but one person in the precinct lawfully assisted in the making
of his ballot under the provisions of section 1208 of the Political Code,
and it does not appear whether the writing was upon the tickets when
they were put into the voters' hands, it must be presumed that the pub-
lic officers did their duty, and put legal tickets into the hands of the
electors, and that the writing was afterward put upon them, and, in the
absence of proof removing the objection, all the ballots other than
the ballot of the voter lawfully assisted, should be rejected as void.

APPEAL from a judgment of the Superior Court of
Siskiyou county.   J. F. ELLISON, Judge.

The facts are stated in the opinion of the court.

_T. M. Osmont, Warren & Taylor_, and _L. F. Coburn_, for
Appellant.

The court erred in admitting the ballots as the best
evidence, it being incumbent upon the contestant to
prove beyond reasonable doubt that the ballots were the
identical ballots cast; that they had been safely kept and
not exposed to the public, nor within the reach of unau-
thorized persons, and that no opportunity had been
given to tamper with them before they could be received
as evidence. (McCrary on Elections, 291–93; _Coglan_
v. _Beard_, 67 Cal. 303; _Kreitz_ v. _Behrensmeyer_, 125 Ill.
141; 8 Am. St. Rep. 349; _Fenton_ v. _Scott_, 17 Or. 189; 11
Am. St. Rep. 801; _Albert_ v. _Twohig_, 35 Neb. 563; _Powell_
v. _Holman_, 50 Ark. 85.)   The court erred in admitting
the ballots not marked by a cross in the square at the

right of the name. (Pol. Code, secs. 1197, 1205, 1211, 1215.) The provisions as to marking are mandatory, and the ballots are void not having been marked in the proper place. (*Bechtel* v. *Albin*, 134 Ind. 193; *Kirk* v. *Rhoads*, 46 Cal. 399; *Whittam* v. *Zahorik* (Iowa, May 15, 1894), 59 N. W. Rep. 61; *Sego* v. *State*, 136 Ind. 700.) The manner in which the elector must express his intention is prescribed in the act, and to depart from the act would be to repeal it. (*Kearns* v. *Edwards* (N. J. Jan. 6, 1894); 28 Atl. Rep. 723; *Lay*. v. *Parsons*, 104 Cal. 661.) The ballots were marked in violation of law. (*State* v. *Walsh*, 62 Conn. 260; *Kearns* v. *Edwards, supra; Whittam* v. *Zahorik, supra; Spurgin* v. *Thompson*, 37 Neb. 39.) The election held in Lake precinct was illegal and void, the statute having been expressly violated. (*People* v. *Seale*, 52 Cal. 71, 621; *Russell* v. *McDowell*, 83 Cal. 70.) The ballots of Cecilville precinct should have been rejected, as no person could be helped to make his ballot except in compliance with section 1208 of the Political Code. The ballot with the letter "J" in the blank space should not be held, in absence of sufficient proof, to constitute a distinguishing mark which would vitiate the ballot. It should be presumed to be an accident or mistake, not vitiating the ballot. (Pol. Code, sec. 1197; *Rutledge* v. *Crawford*, 91 Cal. 526; 25 Am. St. Rep. 212; *Coffey* v. *Lyman*, 92 Cal. 137; *Coffey* v. *Edmonds*, 58 Cal. 521; *Wyman* v. *Lemon*, 51 Cal. 273; *People* v. *Board of Supervisors*, 135 N. Y. 522; *Kreitz* v. *Behrensmeyer, supra*.) The illegality on the part of the election officers in Lake election precinct is not ground for disfranchising the voters of that precinct. (*Sprague* v. *Norway*, 31 Cal. 174; *Minor* v. *Kidder*, 43 Cal. 237; *Preston* v. *Culbertson*, 58 Cal. 209; *Coffey* v. *Edmonds, supra; People* v. *Cook*, 8 N. Y. 67; 59 Am. Dec. 468; *Cleland* v. *Porter*, 74 Ill. 76; 24 Am. Rep. 273; *Piatt* v. *People*, 29 Ill. 54; *Board of Supervisors* v. *People*, 65 Ill. 360; *Fry* v. *Booth*, 19 Ohio St. 25; *Soper* v. *Sibley County*, 46 Minn. 274; *Farrington* v. *Turner*, 53 Mich. 27; 51 Am. Rep. 88; *Whipley* v. *McKune*, 12 Cal. 360;

*De Berry* v. *Nicholson*, 102 N. C. 465; 11 Am. St. Rep. 767; *State* v. *Walsh, supra; Attorney General* v. *May*, 99 Mich. 538; *Attorney General* v. *McQuade*, 94 Mich. 439; *People* v. *Board of Canvassers*, 129 N. Y. 395.)

*Gillis & Tapscott*, and *James F. Farraher*, for Respondent.

The proof that the ballots were safely kept was sufficient to admit them as the best evidence, and it is not sufficient to exclude them that there was a mere imaginary possibility of interference. (*Hartman* v. *Young*, 17 Or. 150; 11 Am. St. Rep. 787; *People* v. *Livingston*, 79 N. Y. 288; *O'Gorman* v. *Richter*, 31 Minn. 25; 6 Am. & Eng. Ency. of Law, 425; *Budd* v. *Holden*, 28 Cal. 133; *Dorey* v. *Lynn*, 31 Kan. 758; *Coglan* v. *Beard*, 67 Cal. 306; *Blankinship* v. *Israel*, 132 Ill. 514.)   The ballots on which the cross was stamped at the right-hand side of the name were properly counted, and it is not essential that the cross should be in a square. (Pol. Code, secs. 1197, 1205.)   Statutes limiting the right of suffrage should be liberally construed in favor of the citizen. (*Bowers* v. *Smith*, 111 Mo. 45; 33 Am. St. Rep. 491; *In re Vote Marks*, 17 R. I. 812; *State* v. *Saxon*, 30 Fla. 668; 32 Am. St. Rep. 46; McCrary on Elections, secs. 128, 190.)   The Cecilville ballots were not rendered void by the mere irregularity in having the name of a candidate for justice of the peace written on the ballot, and the voters were authorized to rely on the regularity of the ballots prepared by the proper officers. (*Bragdon* v. *Navarre* (Mich. Sept. 27, 1894), 60 N. W. Rep. 277; *Lindstrom* v. *Board of Canvassers*, 94 Mich. 467; *Allen* v. *Glynn*, 17 Col. 338; 31 Am. St. Rep. 304; *Bowers* v. *Smith*, 111 Mo. 45; 33 Am. St. Rep. 491; *Attorney General* v. *May*, 99 Mich. 538; *Attorney General* v. *McQuade*, 94 Mich. 439; *People* v. *Board of Canvassers*, 129 N. Y. 395.)

HENSHAW, J.—Appeal from the judgment taken within sixty days after its rendition.   The evidence is brought up for review by bill of exceptions.

By the official canvass of the supervisors Smith was
declared elected over Tebbe to the office of county super-
intendent of schools of Siskiyou county at the last gen-
eral election by a plurality of one vote. Tebbe then
instituted this contest. The result of the judicial count
was to increase contestant's total vote by three, no change
being made in the number of votes accredited to con-
testee, and accordingly the judgment of the court de-
clared contestant to be duly elected.

1. The first point urged is that the court erred in
overruling contestee's objection to receiving the ballots
in evidence.

The evidence showed that the ballots and returns
reached the county clerk through the proper channels.
The sealing-wax on some of the packages was broken
when they were received from the express office; other
seals were broken in handling. The packages were
placed on top of a large case in the clerk's office, and
there remained in the condition in which they had ar-
rived until the completion of the canvass by the super-
visors, when they were put into three gunnysacks, each
sack securely bound and sealed, and placed under the
clerk's desk, where they remained until produced in
court. Upon being opened they were found to be in
the same condition as when they were sealed by the
clerk. There had been no opportunity for any one to
tamper with the ballots, and in fact they had not been
disturbed. They were left alone only when the office
was closed and locked. During office hours they were
never left alone, excepting upon one occasion, when the
deputy stepped out for "a minute and a half," leaving
one Robertson in the office. At that time the ballots were
in the gunnysacks, and neither the sacks nor the bal-
lots had been disturbed. Tebbe, the contestant, was a
deputy clerk during this time, but he was never left
alone in the office, and was given no key to it. We
cannot see any thing suspicious in this last circum-
stance. Upon the contrary, it reflects credit upon the
prudence of the clerk and the fair dealing of all con-

cerned.  Knowing of the impending contest, they took all reasonable precautions to avoid exposing either the ballots or contestant's connection with them to any suspicion.

The principles of law and the rules of evidence governing cases such as this have been so often declared that a review of the many authorities is unnecessary. Those curious or interested in pursuing the subject will find in the reporter's notes, preceding, many instructive cases collated by the industry of counsel.  Suffice it here to say that, while the ballots are the best evidence of the manner in which the electors have voted, being silent witnesses which can neither err nor lie, they are the best evidence only when their integrity can be satisfactorily established.  One who relies, therefore, upon overcoming the *prima facie* correctness of the official canvass by a resort to the ballots must first show that the ballots, as presented to the court, are intact and genuine. Where a mode of preservation is enjoined by the statute proof must be made of a substantial compliance with the requirements of that mode.  But such requirements are construed as directory merely, the object looked to being the preservation inviolate of the ballots. If this is established it would be manifestly unjust to reject them merely because the precise mode of reaching it had not been followed.

So, too, when a substantial compliance with the provisions of the statute has been shown, the burden of proof shifts to the contestee of establishing that, notwithstanding this compliance, the ballots have in fact been tampered with, or that they have been exposed under such circumstances that a violation of them might have taken place.  But this proof is not made by a naked showing that it was possible for one to have molested them.  The law cannot guard against a mere possibility, and no judgment of any of its courts is ever rendered upon one.

When all this has been said it remains to be added that the question is one of fact, to be determined, in the

first instance, by the jury or trial judge; and, while the ballots should be admitted only after· clear and satisfactory evidence of their integrity, yet, when they have been admitted, this court will not disturb the ruling, unless we in turn are as well satisfied that the evidence does not warrant it. In this case we do not think the ruling was erroneous

2. Nine ballots were received and counted by the court for contestant, which were marked with a cross, not in the square at the right of his name, but in the marginal space to the right, thus:

| 120 | George A. Tebbe.. X ..Democrat |
|-----|-------------------------------|

It is urged against the ruling that the ballots were not marked as required by statute, and that the marks so placed served as distinguishing marks, and rendered the ballot void. (Pol. Code, secs. 1211,◦1215.)

The provisions as to the marking of ballots are in their nature mandatory (*Attorney General* v. *McQuade,* 94 Mich. 439; *People* v. *Board etc.,* 129 N. Y. 395; *Taylor* v. *Bleakley* (Kan., Apr. 6, 1895), 39 Pac. Rep. 1045; *Attorney General* v. *May,* 99 Mich. 538; *Lay* v. *Parsons,* 104 Cal. 661; *Whittam* v. *Zahorik* (Iowa, May 15, 1894), 59 N. W. Rep. 57); but, as is said in *Bowers* v. *Smith,* 111 Mo. 45, 33 Am. St. Rep. 491, " all statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor."

If we should find a provision in our statutes requiring the voter to mark the cross in the square to the right of the candidate's name we would feel constrained to adopt the rule and reasoning of the supreme court of Indiana, where such a provision exists, construing which the court said: "If we hold this statute to be directory only, and not mandatory, we are left without a fixed rule by which the officers of election are to be guided in counting the ballots."

But our statutes contain no such mandatory provision. So far as they are pertinent to this discussion

the provisions are that "there shall be a margin on the right-hand side of the names, at least one-half of an inch wide, so that the voter may clearly indicate, in the way hereafter to be pointed out, the candidate and candidates for whom he wishes to cast his ballot." The clerk is, in printing the ticket, to place upon it the following: "To vote for a person, stamp a cross (X) in the square at the right of the name." (Pol. Code, sec. 1197.)

The mandatory provisions as to voters are found in sections 1205 and 1215 of the same code. "He shall prepare his ballot by marking a cross after the name of the person or persons for whom he intends to vote, . . . . and, in case of a constitutional amendment or other question submitted to the vote of the people, by marking in the appropriate margin a cross (X) against the answer he desires to give." (Pol. Code, sec. 1205.)

"No voter shall place any mark upon his ballot by which it may be afterward identified as the one voted by him." (Pol. Code, sec. 1215.)

It will be noted that these sections make no mention of the square, and that there is not even an express direction to the clerk to place a square opposite the names of the candidates. The voter is only commanded to place the cross in the marginal space to the right of the candidate's name, and when he has done this he has complied with the mandatory provisions of the law. True, the statute contemplates, at least inferentially, the making of a square, and that the square is the proper place for the marking of the cross; but it has not made the doing of this a prerequisite to the casting of a legal ballot. The intention of the voter is as plainly indicated by the one marking as by the other, and, as was said by the supreme court of Rhode Island, in construing a similar law: "Our opinion is, that a cross placed in the margin of the ballot, on the right of the names of the candidates, opposite a candidate's name, should be counted as a vote for the candidate opposite whose name it is placed, whether the margin have any square in it or not, and if there be a square in it, even though

the cross is without, or partly without, the square. All that chapter 731 requires to make the cross effective as a vote is that it shall be inscribed in the right-hand margin, opposite the name of the person intended to be voted for." (*In re Vote Marks*, 17 R. I. 812.)

As to the last contention upon this point, that the marks served to distinguish the ballots, it need but be suggested that it would not require much ingenuity or intelligence to place the cross even within the square in such a manner as would enable the ballot to be distinguished. When a legal mark is placed upon the ballot in a legal place the ballot cannot be rejected because the mark, as placed, may serve some ulterior purpose. Section 1215 of the Political Code in forbidding marks does not include the cross legally placed. The ballots were, therefore, properly received.

3. The ballot from Sawyer's Bar precinct (Exhibit F) should have been rejected. It bore upon it the letter "J" written in pencil in the blank space left for the insertion of the name for justice of the peace. Doubtless it may have been the intention of the voter to write a name, and he may have abandoned his intent after setting down the initial letter; but doubtless, also, the mark could serve as a distinguishing mark, and, being one having no lawful right upon the ballot, it renders it void.

The case differs from *Rutledge* v. *Crawford*, 91 Cal. 526, 25 Am. St. Rep. 212, where this court held that the impression (of printer's ink) upon the back of the ballot was as attributable to accident as design. Here the writing of the letter was an affirmative act of the voter. He had his remedy, having improperly marked his ballot, by calling for the issuance to him of a fresh ticket. (Pol. Code, sec. 1207.)

4. The account of the election at Lake precinct is a breeze from Arcady. The polls should have opened at 6:31, A. M. Smith received thirteen votes in this precinct, Tebbe twenty. William Otey, called for contestant, testified: " On November 6th last I was at the

polls of Lake election precinct on the Fairchild ranch.
. . . . I got there between 8 and 9 o'clock in the morn-
ing. Served on the election board in my father's place.
When I got there Fairchild, Henry Seale, and the hands
working on the ranch were there. I do not remember
any one else. The polls were opened, I should judge,
some time near 10 o'clock. We took an adjourment
when we went to dinner. Took the ballot-box with us.
Fairchild, the old gentleman, carried it; he was one of
the election officers. . . . . The other materials, ballots
and every thing, we left in the poll-room when we went
to dinner. We left the ballot-box on the table while
eating dinner—on same table. That ballot-box did not
pass into the hands of other persons. I think there
were bystanders around the polls at the time we went
to dinner. . . . . The house is about a hundred yards
from the polling-place. Between the house and school-
house there were some men. Some had voted, and
some were working on the ranch. I think some other
people took dinner with the board. When we were
through Fairchild carried the box back. No person
was deprived of voting because the polls were not
opened earlier. I know that no one came there without
voting that was entitled to vote."

The law provides that the polls must open at sunrise,
and be kept open until 5 P. M., and that the ballot-box
must not be removed from the polling-place or presence
of the bystanders. (Pol. Code, secs. 1160, 1162.)

It is the rule that mandatory provisions for the hold-
ing of an election must be followed, or the failure will
vitiate it, while the departure from the terms of a direct-
ory provision will not render it void in the absence of
a further showing that the result of the election has
been changed or the rights of the voters injuriously
affected thereby. (Code Civ. Proc., sec. 1112; *Russell* v.
*McDowell*, 83 Cal. 70.) But the rule as to directory pro-
visions applies only to minor and unsubstantial depart-
ures therefrom. There may be such radical omissions
and failures to comply with the essential terms of a di-

rectory provision as will lead to the conclusive presumption that the injury must have followed. A substantial compliance with the terms of directory provisions is, after all, required. And such a substantial compliance is not had by strictly following some provisions, while essentially failing to observe others. There must be a reasonable observance of all the prescribed conditions.

It is the duty of the courts so far to adhere to the substantial requirements of the law in regard to elections as to preserve them from abuses subversive of the rights of the electors. And under this view the question becomes a broader one than can be disposed of by answering that in the individual case no harm resulted. Thus, in *Knowles* v. *Yates*, 31 Cal. 82, the contention of appellants was that, admitting that there was no fraud, and that the votes were cast by qualified electors, still the fact that in certain precincts the polls were opened, without reason, at long distances from the appointed places, was enough in itself to call for the rejection of the votes, and this court so held. Likewise, in the case of *People* v. *Seale*, 52 Cal. 71, where no question of fraud or injury was involved, but where at an election, called for voting a school tax, the polls were opened at 1 o'clock P. M., and closed at 6, instead of being opened at one hour after sunrise, and kept open until sunset, as the law then required, this court, without hesitation, declared the election invalid.

In this case we are quite willing to believe that the misconduct of the officers of Lake precinct was prompted by nothing worse than ignorance and lack of appreciation of the responsibilities of their positions, and we may say further, for such is the evidence, that no harm is shown to have resulted from their conduct; but, looking to the purity of elections and integrity of the ballot-box, we are constrained to hold that conduct like this amounts in itself to such a failure to observe the substantial requirements of the law as must invalidate the election. And, while reluctant so to hold in this instance, we are confirmed in the opinion by considera-

tion of the fact that any other interpretation would add grave perils to the safe conduct of our elections which are already harassed by dangers enough. The votes of Lake precinct should, therefore, have been rejected.

5. Upon all the ballots cast in Cecilville precinct there appeared the following, written in the blank space under the office of justice of the peace: " G. G. Brown —— Republican." The evidence discloses that this writing was all done by the same person, and, further, that there was but one person in the precinct lawfully assisted in the making of his ballot under the provisions of the code. (Pol. Code, sec. 1208.) The record, unfortunately, does not disclose who did the writing, nor whether it was upon the tickets when they were put. into the voters' hands. Left, then, to the presumption of the performance of duty by public officers, it must be held that the officers put legal tickets into the hands of the electors, and that the writing was afterward put upon them. But an elector unable to write can, under our present laws, have a name inscribed upon his ballot in only one legal way, and that is by pursuing the method prescribed by section 1208 of the Political Code. This requirement is clearly mandatory, since it is further declared that " any ballot which is not made as provided in this act shall be void, and shall not be counted." (Pol. Code, sec. 1211.) In *Attorney General* v. *May, supra,* the supreme court of Michigan, construing a similar statute, held that inspectors of election had no right to assist in the marking of ballots, except in the manner provided by law, and that ballots marked in any other than the prescribed manner were void. In the present state of the evidence only the ballot of the voter lawfully assisted should be counted. It must be held, therefore, that the other ballots of Cecilville precinct should not have been counted. What is here said is addressed to the evidence as it appears in the record. It may be that upon a new trial additional evidence will remove the objections now found.

The other points do not require consideration. They

are either covered by what has been said, or do not involve error. But for the foregoing reasons the judgment is reversed and the cause remanded.

TEMPLE, J., VAN FLEET, J., and HARRISON, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment, and also in the opinion of Mr. Justice Henshaw, except as to the Cecilville precinct. It will be observed that there is no evidence tending to show *when* " C. C. Brown, Republican," was written on the ballots. If there be a distinguishing mark on a ballot when it is voted the ballot should not be counted; but if the mark be placed on the ballot after it had been properly voted, then, at the trial of a contest, it should be counted. Now, upon the trial in court of an election contest, if a marked ballot be found and there is no evidence as to the time of the marking, must the court *presume* that it was marked before it was voted? Such a rule would afford an evil-disposed person who could get temporary access to the ballots after they had been counted an easy and safe method of changing the result in a close contest by simply marking, and thus invalidating, a few ballots in which the votes were for the prevailing party. Of course, fraud should be carefully guarded against, but it seems to me that the rule contended for would be much like closing a wicket and leaving open a barn door. I do not see that there are any presumptions upon which the problem can be solved. If we presume that the ticket was not marked when the election officers gave it to the voter we must also presume that it was not marked when those officers counted it; and if we are also to presume that the ballots were afterward so securely kept that no one could get access to them it is evident that all the presumptions taken together afford no aid in the solution of the question. In the case at bar it is not contended that there was any *actual fraud* committed, even in the matter of

voting for justice of the peace; and, before throwing out votes honestly cast for superintendent of schools, I am inclined to think that there should have been *some evidence* tending to show that the marking of the votes for justice of the. peace was done before the ballots were voted.   And it is quite probable that such evidence could readily have been obtained.   The returns should show whether or not the said ballots were counted for Brown, and the election officers ought to be able to throw some light upon the question whether the ballots were marked when they were examined during the process of counting.

GAROUTTE, J., concurred.