## MURPHY v. CITY OF SAN LUIS OBISPO et al.[*]

### L. A. No. 273; May 20, 1897.

#### 48 Pac. 974.

**Municipal Bonds.**—A City has No Power to Issue Bonds Payable in "gold coin of the United States" (in conformity with the ordinance submitting the matter to the voters, and the notice of election), instead of in "gold coin or lawful money of the United States," as required by act of March 1, 1893 (Stats. 1893, p. 61).

**Municipal Bonds.**—The Term "Five Per Cent per Annum" in a municipal bond means that the interest is payable annually.[1]

**Municipal Bonds—Election—Ballots.**—Under Statutes of 1889, page 399, section 2, authorizing a city to prescribe by ordinance the manner of holding a special election for the issuance of municipal bonds, an ordinance directing each voter to indicate his wish by "writing or causing to be written or printed 'Yes' or 'No' on the right-hand margin on his ticket, opposite the proposition on which he may desire to vote," is mandatory, and is not satisfied by stamping a cross opposite the word "Yes" or "No" printed after the proposition, as provided by the general election law, which the ordinance declares shall only be followed when not in conflict with said ordinance.

APPEAL from Superior Court, San Luis Obispo County; V. A. Gregg, Judge.

Suit by P. W. Murphy against the city of San Luis Obispo and others. From a judgment for defendants and from an

---

*For subsequent opinion in bank, see 119 Cal. 632, 51 Pac. 1085.

1 Cited in Hollywood Union High School Dist. v. Keyes, 12 Cal. App. 175, 107 Pac. 131, and there stated to be without authority as law.

order denying a new trial plaintiff appeals. Reversed, and the judgment ordered for plaintiff.

Graves & Graves for appellant; W. H. Spencer for respondents.

CHIPMAN, C.—This is an action brought to enjoin the defendants from selling or disposing of certain bonds issued, but not yet sold, by the city of San Luis Obispo (one of the defendants), and to restrain defendants from levying the taxes mentioned in the complaint, and from enforcing a certain ordinance of the said city. The cause was tried by the court, and judgment given for the defendants. The appeal is from the judgment, and also from the order of the court denying plaintiff's motion for a new trial.

Appellant presents three grounds of attack upon the bonds in question: First, that the bonds are made payable in "gold coin of the United States" instead of "gold coin or lawful money of the United States"; second, that the question as to whether the interest on the bonds would be payable annually or semi-annually was not submitted to the voters; and, third, that the voters voting for said bonds voted by stamping a cross opposite the propositions submitted to them, instead of indicating their wish by writing "Yes" or "No" opposite the proposition they desired to vote for. The regularity of the proceedings of the city authorities is not drawn in question, except as these may relate to appellant's second and third points. By the act of March 1, 1893 (Stats. 1893, p. 61), it is required that the bonds and interest "shall be payable in gold coin or lawful money of the United States." The ordinance provided that both principal and interest shall be payable "in gold coin of the United States," and the notice of election was in that form. The contention of appellant is that the bonds should have been made payable "in gold coin or lawful money of the United States," and not in "gold coin" only. The argument is that, because the previous statutes authorizing the issuance of bonds (Act March 19, 1889, Stats. 1889, p. 399, and Act March 11, 1891, Stats. 1891, p. 94) were silent as to the kind of money in which the bonds might be made payable, and there was no restriction in this regard, therefore the amendment introducing a restriction was intended to limit the power and to com-

pel the proper authorities to insert the precise language of the statute, and all of it, to wit, "gold coin or lawful money of the United States"; and, not having done so, the bonds were void. Appellant relies upon Skinner v. City of Santa Rosa, 107 Cal. 464, 29 L. R. A. 512, 40 Pac. 742. The respondents reply that the intention of the statute was to leave with the municipality the option of making the bonds payable in either "gold coin" or in "lawful money of the United States." In the case of Skinner v. City of Santa Rosa the ordinance calling a special election to vote upon the bonds described them as serials, "payable in gold coin or lawful money of the United States," following the language of the statute. The notice of the election contained the same description of the bonds proposed to be issued. There were some features introduced about which other questions arose, not involved in this case. After the election, at which the vote was favorable to the issue, bonds were prepared in exact conformity to all the particulars stated in the notice; i. e., the bond was "payable in gold coin or lawful money of the United States." Steps were taken to sell the bonds, but, failing to find a purchaser in their then form, the city council passed another ordinance rescinding the former ordinance, prescribing the form of the bond, and changed the form in three particulars: (1) They were made payable at the Chemical Bank in New York City, instead of the place named in the notice. (2) They were made payable "in gold coin of the United States of America of the present standard of weight and fineness," instead of the statutory form, and as stated in the notice. (3) Interest was made payable semiannually in like gold coin, instead of annually, as stated in the notice. The question presented and decided was, Has the assent of the voters been given to the proposed bond? One of the changes made was to make the bond "payable in gold coin of the United States of the present weight and fineness," whereas the voters had voted upon a bond "payable in gold coin or lawful money of the United States"; and the court said: "The kind of money in which payment must be made would influence any business man in determining whether he will favor his municipality incurring a debt for the payment of which, in common with others, his property is liable to taxation." The decision is based largely upon the proposition that the city council could not change the terms

of the submission after the vote was taken, but it also points strongly to the further proposition that the council must submit to the voters a bond in strict conformity to the statute, for it is said in the opinion that "the logical inference from the case above cited [referring to Yesler v. City of Seattle, 1 Wash. 308, 25 Pac. 1014] is that, as to all matters required to be submitted, such submission measures the authority of the common council." The opinion then calls attention to the fact that the law prior to 1893 was silent as to the kind of money in which payment should be made, but that by that latter act an amendment required that the bonds and interest "shall be payable in gold coin or lawful money of the United States; that before this amendment there was no restriction as to the kind of coin or currency; that the power to determine that question was as ample as that of a natural person to stipulate in what his personal obligations should be paid." The opinion then says: "The amendment must, therefore, have been intended to restrict that power, and this was done by expressly stating the kind of money in which alone they 'shall be' made payable." And it is added: "Whether the increased value of the bonds caused by the stipulation that they [referring to the Santa Rosa bonds] shall be paid in gold coin of the present standard of weight and fineness would equal or exceed any probable appreciation of gold cannot control the express provisions of the statute in that regard." The court holds, in conclusion, that, where the case arises before the bonds have been delivered, the city has no power to issue them in a form which does not substantially comply with the terms stated in the ordinance of submission and notice of election, and with the statute under which the proceedings were had.

In the case at bar the bonds are in conformity with the ordinance and with the notice of election, but they are not in the terms of the statute as to the kind of money made payable, and the question is, Do they substantially comply with the statute? It seems to me that to hold that they do would violate the reasoning upon which Skinner v. City of Santa Rosa rests. Respondent, with much force and reason, suggests: "That the plain grammatical and common-sense construction is that the city should choose between the two kinds of currency. It must adopt one or the other, but the wisdom as well as the expediency and responsibility of the

choice was left to the people themselves or their representatives. That they might deem it more advantageous to themselves, in seeking a market for their bonds, to pay in gold; and the legislature did not intend to deprive them of this advantage, or to substitute its judgment for theirs." This, it seems to me, is as strong a view as it is possible to present, and covers concisely the whole argument. But this is precisely what the legislature did when it passed the act in 1889, and later, when it was amended, in 1891, the municipality was left without restriction. If, then, the legislature so intended the law to remain, why did it amend the act in this very particular? We had the same kind of money in 1889 and 1891 as in 1893. In fact, all our money was of equal value, and no conceivable motive occurring to my mind could have actuated the legislature to introduce this amendment unless it was to provide against a possibility that the time might come when "gold coin" would have a different value from that of some other "lawful money of the United States." If "gold coin" and "lawful money of the United States" were terms importing money of equal, fixed and unchangeable value, there would have been no occasion for a change in the law. But, as this is not true, I can see a motive in so providing that the maker of the bonds should always have the option to pay in that money declared by the United States to be lawful money.

2. It is further contended that the question as to whether the interest on the bonds would be payable annually or semiannually was not submitted to the voters, but should have been. I think the law was fully complied with in this particular. The term "five per cent per annum" means interest payable annually, and this is the form prescribed in the bond. There is no merit in this point.

3. Appellant objects further that the ballot used was a violation of the directions in the notice of election; that the notice required the voter to write the word "Yes" or "No" opposite the proposition he desired to vote for, whereas by the ballot voted he was directed in fact to stamp a cross. It was found by the court that two-thirds of the voters who voted at said special election voted said ticket by stamping a cross opposite the word "Yes" or "No," which was printed after the proposition on said ticket, and in no other way. Appellant says that this method of voting may be good under

the Australian ballot system, but, as that system applies to general elections only, not having been made applicable to a special election for the issuance of bonds, but, on the contrary, the city having by ordinance required the voters to indicate their wish by writing or causing to be written or printed "Yes" or "No," the election must be held to be void. Section 6 of Ordinance No. 76 prescribed the manner of holding the election, which was: "(1) As provided by law for holding elections in said city; (2) as provided by the general election laws of this state, except where such general laws may conflict with the state law for elections of the kind hereby called, or with this ordinance; and (3) as provided in this ordinance." The mode of voting for or against the indebtedness was prescribed in several particulars, size of paper, heading of ticket, etc., and, among other things, it was provided as follows: "Each proposition set forth in section 2 of this ordinance shall be voted on separately, and must be printed on such tickets as follows: '(1) Bonding for city waterworks, $90,000. Bonding for sewer improvements, $34,500.' Each voter shall indicate his wish by writing or causing to be written or printed 'Yes' or 'No' on the right-hand margin on his ticket, opposite the proposition on which he may desire to vote." It will be observed that the election was to be held as provided by law for holding elections in the city of San Luis Obispo, and as provided in the ordinance, and the general election law of the state was to be resorted to only (1) where not in conflict with the mode pointed out in the ordinance, or (2) where the general law did not conflict with the state law for elections of the kind called. Section 2, page 399, Statutes of 1889, prescribes the manner of procedure to call an election for the purposes named. It provides that the legislative branch of the city shall by ordinance "fix the day on which such special election shall be held, the manner of holding such election and the voting for or against incurring such indebtedness; such election shall be held as provided by law for holding such elections in such city, town or municipal corporation." The act of 1891, supra, made no change in this regard, nor did the act of 1893, supra. Appellant does not challenge the regularity of the proceedings, except in the single fact that the voter made known his wish by stamping a cross after the proposition, instead of writing his wish. The question pre-

sented is certainly one involving a clear departure from the provisions of the ordinance. It was plainly stated therein that ''each voter shall indicate his wish by writing, or causing to be written or printed, 'Yes' or 'No' on the right-hand margin on his ticket opposite the proposition on which he may desire to vote.'' The general election law was to be applicable only when not in conflict with the ordinance. It seems to me that the board had no authority for changing the form of the ballot in the feature under consideration. I do not think that, in view of the ordinance, we are at liberty to fall back upon the Australian system, now embodied in our general law, for in the particular mentioned it is in direct conflict with the mandate of the ordinance.

The question, then, is, Was the ballot prescribed and voted such compliance with the ordinance as should be upheld by this court? It is true, as respondents suggest, that the words ''Yes'' and ''No'' were printed on the ballot opposite the proposition in separate lines, but can it be said that the voter printed them, or caused it to be done? It is true, the ballot is so formed that placing a cross oposite the ''Yes'' or ''No'' would convey the wish of the voter, because the ballot informs him that he is to so express his wish, and the operation is easy and simple. The question must, it seems to me, resolve itself into the one proposition: Was the method directed by the ordinance mandatory? In the case of Lay v. Parsons, 104 Cal. 661, 38 Pac. 447, the provisions of the so-called ''Australian Ballot Law'' were under review. Mr. Justice Van Fleet, speaking for the court, said: ''The law requires the voter to mark his ballot by means of a stamp, by putting a cross opposite the name of each candidate thereon for whom he intends to vote. This provision of the law is, we think, mandatory, and no other method will satisfy it.'' In the case of People v. Town of Sausalito, 106 Cal. 500, 39 Pac. 937, where the same law was before the court, Mr. Justice McFarland said: ''Appellant also contends that ballot 'F' should have been counted against incorporation; but it had no mark of any kind, except at the bottom, entirely below all the printed matter, it had the words 'Against Incorporation' written with a pencil, and was properly excluded. There is no provision for that method of voting except when one desires to vote for a candidate for office whose name is not on the printed list on the ballot. Under our present

election laws it is not enough to find out generally the intention of the voter (as it was under a former and simpler system). That intention must be expressed in the manner prescribed by the law, which has also other purposes, as the preservation of absolute secrecy,'' etc. In the case of Tebbe v. Smith, 108 Cal. 101, 49 Am. St. Rep. 68, 29 L. R. A. 673, 41 Pac. 454, the general election law again came under review. Mr. Justice Henshaw, speaking for the court, said: ''It is the rule that mandatory provisions for the holding of an election must be followed, or the failure will vitiate it, while the departure from terms of a directory provision will not render it void in the absence of a further showing that the result of the election has been changed, or the rights of the voters injuriously affected thereby. But the rule as to directory provisions applies only to minor and unsubstantial departures therefrom. There may be such radical omissions and failures to comply with the essential terms of a directory provision as will lead to the conclusive presumption that the injury must have followed.'' Mr. Paine, in his work on Elections, says (section 497): ''The disregard of directory requirements of law by voters or by officers of registration or election is not, in the absence of fraud, a sufficient ground for rejecting the entire poll of a precinct. But a violation by electors or officers of a mandatory requirement of law which changes or materially affects the result is, even in the absence of fraud, a sufficient ground for rejecting an entire poll when it cannot be purged. Statutes prescribing in affirmative language specific directions for electors or officers of registration or election are directory, unless the acts prescribed are in their nature essential to the validity of the election. Statutes expressly declaring specified acts or omissions fatal to the validity of an election, or expressly prohibiting the performance or omission of specified acts, are mandatory''; and he adds: ''The most unimportant requirements may be made mandatory by a clear expression of the legislative will.'' In the case here it can hardly be said that the manner of indicating the voters' wish was unimportant, but, whether so or not, the ordinance did very clearly declare that ''each voter shall indicate his wish in writing, or causing to be written or printed, 'Yes' or 'No' on the right-hand margin on his ticket opposite the proposition on which he may desire to vote.'' And how can we say that this is not

mandatory? Or how can we say that an election board could disregard this plain mandate and change the method so radically? Or how can we say that ballots marked with a cross opposite a printed "Yes" or "No" are the equivalent of ballots which the ordinance declared should have written or printed, or caused to be written or printed, on them by the voter himself the word "Yes" or "No"? Respondents cite several cases where official signatures made by the use of a fac-simile stamp were held to be good, and like cases, but they do not seem to me to involve the same principle as here. A case is cited also where the form of ballot prescribed was "For the Bonds" or "Against the Bonds," and a ballot was cast with the printed words upon it, "For the Bonds," with a line running through the word "for," and the word "Against" written under it, and it was held a valid vote against the bonds, citing Clark v. Commissioners, 33 Kan. 202, 52 Am. Rep. 526, 6 Pac. 311. This case is in harmony with others where the question alone is as to the intention of the voter, and where he scratches out a name and writes another in lieu of it, but it does not meet the case where an entirely different method than that prescribed by the statute is adopted for an entire ballot. I think the directions of the ordinance as to the manner of ·voting were mandatory, and should have been followed. In this view of the case a new trial could avail nothing, and it is therefore recommended that the judgment of the court below be reversed and judgment be entered for plaintiff as prayed for in the complaint.

.We concur: Belcher, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is reversed and the court below is directed to enter judgment for the plaintiff as prayed for in the complaint.