[Sac. No. 413. Department Two. —May 18, 1898.]

## E. LAUER, Respondent, v. W. F. ESTES, Appellant.

ELECTION CONTEST—VALIDITY OF BALLOTS—DISTINGUISHING MARKS.—In an election contest under our present laws, the court cannot confine itself to a mere inquiry as to what the voter intended to express by his ballot, but any ballot not made as provided in the election law, is void and cannot be counted; and ballots containing any distinguishing marks thereupon, which are not legal marks placed upon the ballot in a legal place, and which do not appear to have been the result of an accident, are thereby vitiated.

ID.—EVIDENCE—DECLARATION OF DISQUALIFIED VOTER—AFFIDAVIT.—The declaration of a voter, who is proved to have been disqualified, as to how he voted, made in the form of an affidavit before a notary public, is no part of the *res gestae*, and is inadmissible hearsay.

APPEAL from a judgment of the Superior Court of Modoc County. G. G. Clough, Judge.

The facts are stated in the opinion of the court.

G. F. Harris, for Appellant.

J. H. Stewart, D. W. Jenks, Goodwin & Stewart, and H. L. Spargur, for Respondent.

McFARLAND, J.—This is an election contest and involves the office of supervisor for the fourth supervisor district of Modoc county. The board of supervisors after canvassing the returns declared Estes elected, and he received the certificate of election. Afterward Lauer commenced this present contest; and the superior court rendered a judgment annulling the said certificate of election and declaring Lauer to have been duly elected to said office. From this judgment Estes appeals.

The court found that the appellant Estes received one hundred and thirty-one legal votes for said office of supervisor. By finding III the court found that the respondent Lauer received one hundred and thirty-two legal votes for said office; and in finding VII it is found that the said respondent Lauer received one hundred and thirty-three legal votes for the office. Appellant contends that these two findings as to the number of votes received by the respondent are fatal to the validity of the judgment, because they are inconsistent and uncertain. These find-

ings might be embarrassing under certain circumstances, but we do not think that matter material in the case at bar, because, in our opinion, there were errors committed by the court prejudicial to the appellant to the extent of at least three votes.

In this case—and the same thing occurs in most election contests—each counsel contends that, with respect to certain points, the evident intention of the voter expressed by the ballot should prevail as against what is called the "technicalities" of the election law, while with respect to other points the same counsel contends that other votes should be rejected because not in compliance with the mandatory provisions of the code, no matter how clearly the ballots may express the intention of the voters. For instance, respondent's counsel contends that the court was right in excluding a certain vote for appellant, because the stamp on the ballot was outside of the perforated line, which ruling appellant's counsel considers highly technical, erroneous, and unjust, because the intent to vote for appellant was quite clear. But appellant contends that certain other votes counted for respondent should have been excluded, notwithstanding the apparent intentions of the voters, upon grounds which respondent's counsel considers highly technical. The truth is, that under our present election laws courts cannot confine themselves to a mere inquiry as to what the voter intended to express by his ballot. The law has many other purposes; and to accomplish them it provides in great detail what the ballots shall be—what the voter may do and what he may not do; and it declares that "any ballot which is not made as provided in this act shall be void, and shall not be counted." (Pol. Code, sec. 1211.) For instance, the law evidently contemplates that the intent which a ballot expresses may be the result of coercion or undue influence, and endeavors to prevent one having power over another from knowing how the latter voted; and so it is provided that "no voter shall place any mark upon his ballot by which it may be afterward identified as the one voted by him." (Pol. Code, sec. 1215.) And this provision is mandatory. (*Tebbe v. Smith*, 108 Cal. 108; 49 Am. St. Rep. 68, and cases there cited.)

Under the sections of the code last above quoted, the court erroneously counted for the respondent the "challenged ballot No. 15," attached to the transcript between pages 42 and 43. In

that ballot the voter regularly stamped the number of presidential electors for whom he was entitled to vote, and at a point a couple of inches further down on the ballot, and opposite certain other candidates for presidential electors, there is a mark apparently made with ink, which is clearly a distinguishing or identifying mark within the meaning of the code. It is not slight, nor is it connected with any other mark properly made by the stamp, nor is there any evidence that it was a mark made by the folding of the ballot. It stands by itself, is in a place where it has no authority to be, is about half an inch in diameter, is very distinct and pronounced, and there is no apparent reason why it was not put there as a distinguishing mark. The vote on this ballot was for the respondent Lauer, and should not have been counted for him.

For similar reasons the challenged vote No. 25, which appears on the ballot attached between pages 64 and 65 of the transcript, should not have been counted for the respondent. On that ballot there is a stamp regularly made after the name of Lauer for supervisor, but lower down on the ballot, and opposite the blank line, there is also another distinct cross; and this cross was clearly a distinguishing and identifying mark.

Under the views expressed in *Tebbe v. Smith, supra,* there is no ground for holding that the marks upon said two ballots above referred to are not distinguishing or identifying marks; if we disregard them, we are "left without a fixed rule by which the officers of election are to be guided in counting the ballots." The marks in question were not legal marks placed upon the ballot in a legal place, and were therefore unauthorized. In the Tebbe case the letter "J" was written in the blank space left for the insertion of a name for justice of the peace; and the court say: "Doubtless it may have been the intention of the voter to write a name, and he may have abandoned his intent after setting down the initial letter; but doubtless also the mark would serve as a distinguishing mark, and, being one having no lawful right upon the ballot, it renders it void." Of course, it might clearly appear on the face of a ballot that a mark was the result of accident; but there is no such showing in the case at bar. Either of the marks may have been intended as a distinguishing mark; and being in their nature distinguishing marks they vitiate

the ballots. No doubt, the provisions of the law in this respect sometimes work injustice; but, if so, the remedy is with the legislature.

One Samuel Cole voted at the election in question. The respondent introduced evidence tending to show that he was not a qualified voter because he had not a legal residence at the place where he voted. The evidence was somewhat conflicting on this point, but the court found that he was not a qualified voter, and, under our view of the case, it is not necessary to inquire whether or not that finding was supported by the evidence. But, for the purpose of showing that Cole voted for the appellant, the respondent was allowed, over the objections of the appellant, to introduce a certain written declaration of Cole that he had voted for the appellant. This declaration was in the form of an affidavit made before a notary public. It was made after the election, and within two days of the filing of the complaint in this action. Of course, the fact that the declaration is in the form of an affidavit is of no significance; there is no provision for such an affidavit, and, if false, it would not subject the party making it to the penalties of perjury. It was a mere parol declaration of a voter as to how he voted, made some time after the election, and in no sense part of the *res gestae*—even if such a declaration might be admitted at all as part of the *res gestae.* This declaration was the only evidence offered to prove how the said Cole voted; and "the court thereupon held that Samuel Cole was not entitled to vote at Alturas precinct at said election, and deducted his vote from the votes cast for defendant and contestee W. E. Estes." The evidence was improperly admitted, and the court erred in deducting Cole's vote from the votes cast for appellant. Declarations of voters as to their disqualifications were admitted by the English parliament in contests over seats in that body. Their votes were given *viva voce;* the election records showed how an elector voted; the right to vote was a special franchise exercised by a limited class, and was dependent generally upon a freehold interest in land; and the admission of a declaration of a voter that he was disqualified seems to have been founded mainly upon the fact that such declaration was strongly against his interest as the holder of a special franchise, and really endangered his freehold interest

which was not always a matter of record. This rule has been followed to some extent by Congress and other American legislative bodies; but even there it has been often seriously questioned. In a few judicial decisions this rule has been followed, although the weight of judicial authority is the other way. In *People v. Pease*, 27 N. Y. 45, 84 Am. Dec. 242, there is a *dictum* that a declaration of a voter as to his qualifications is admissible, but the question was not there involved; and in *State v. Olin*, 23 Wis. 309, it is held that a declaration of a voter as to how he voted is admissible, but the rule is stated there upon the authority of *People v. Pease, supra*, which does not sustain the rule to that extent, even if the *dictum* in *People v. Pease, supra*, be taken as an authority.    But in Kansas (*Gilleland v. Schuyler*, 9 Kan. 569), in Illinois (*Beardstown v. Virginia*, 76 Ill. 34), and in Colorado (*People v. Grand County Commissioners*, 7 Colo. 190), the rule is repudiated. There is also an interesting discussion of the question by a Congressional committee in the case of *Cessna v. Meyers*, 43 Congress, Smith, 60, in which the incorrectness and danger of the rule is very clearly and strongly stated. The subject is quite thoroughly reviewed in Paine on Elections, commencing at paragraph 773, and most of the authorities bearing upon the question are there cited, and under paragraph 776 will be found a large part of the opinion of the Congressional committee in the case above referred to of *Cessna v. Meyers*. The author says: "But it is held, both in the United States and in England, that declarations of voters made after the election are not admissible." In this state the point was noticed in *Norwood v. Kenfield*, 30 Cal. 394, but was not determined in the opinion of the court rendered by Sanderson, J; however, in a concurring opinion, Sawyer, J., very pointedly says that such evidence is inadmissible. The question has not arisen in any other case in this state to which our attention has been called. In our judgment the declaration of a voter as to how he voted is clearly incompetent, and hearsay of the most dangerous kind. If admissible, it would afford a most easy method of manufacturing sufficient evidence in a closely contested election case to change the result. Under such a rule, an unqualified voter could give one illegal vote to one candidate, and then, by a simple declaration which would not subject him to any loss or danger, could have deducted

a legal vote from another candidate. - In a close contest between A and B, a friend of A, who had illegally voted for him, would be under a strong temptation to declare that he had voted for B; and it is difficult to imagine another case where the admission of hearsay evidence might be so mischievous. It has been said that in an election contest a voter should be considered as a party, and that therefore his declarations should be admissible. If that be so, then his declarations as to every question involved in the case would be admissible. But in fact he is not a party; he, of course, is not a party of record, and he is not a party in any other sense. This view is very thoroughly established in the report in the case of *Cessna v. Meyers*, above cited.

It does not appear that any illegal votes were counted for appellant.

The above views are, therefore, determinative of this case in favor of the appellant, and make it unnecessary to discuss other questions raised in the case. It may be proper to say, however, that in our opinion the complaint in the case is sufficient, and that no error was committed by the court in the matter of granting a continuance of the trial.

There is no question here as to defeating the real will of the majority of the voters. It does not appear that a majority was in favor of the respondent. It appears that the appellant actually received more votes than the respondent, and the determination of the board of canvassers makes for him a *prima facie* case.

The judgment is reversed and the cause remanded.

Temple, J., and Henshaw, J., concurred.