# SALCIDO v. ROBERTS.*

## Sac. No. 938; February 25, 1902.

### 67 Pac. 1077.

**Election—Ballots.**—Writing a Name in the Wrong Column does not invalidate the ballot as a whole, though the written name cannot be counted.[1]

**Election.**—A Ballot Containing the Name of a Candidate Written under the appropriate heading, but across the horizontal line between the title of the office and next below, or else below such line, is good.

**Election.**—A Ballot Marked With a Cross Opposite the "Yes" and "No" to proposed constitutional amendments is valid in other respects, and must be counted for the candidates properly voted for.

**Election.**—A Mark on a Ballot Made by Folding it before the ink on it had dried does not render the ballot void.

**Election.**—A Ballot Containing the Written Words "Blac Colu" in the blank column under the title "Justice of the Peace," together

————

*For subsequent opinion in bank, see 136 Cal. 670, 67 Pac. 431.

[1] Cited and followed in Baldwin v. Wade, 50 Colo. 134, 114 Pac. 407, where it is held that the design of the voter, if it can be made out from the ballot as marked by him, is to be given effect, in the absence of statutory provisions to the contrary.

with a cross opposite the printed name of a candidate for that office, is valid in other respects, and must be counted for the candidates for other offices properly voted for, the court presuming that the voter intended to vote for a person named "Blac Colu."

Election.—Under Political Code, Section 1211, providing that, if a voter marks more names than there are persons to be elected to an office, his ballot shall not be counted for such office, a ballot so marked can be rejected only as to such office.

Election.—A Mark Made Opposite a Name by an instrument so full of ink as to practically make a round spot or blot instead of a cross, but in which the cross can be seen, is a sufficient mark.

APPEAL from Superior Court, Calaveras County; C. V. Gottschalk, Judge.

Action by J. Salcido against J. W. Roberts, contesting defendant's election to the office of supervisor. From a judgment for defendant, plaintiff appeals. Affirmed.

James A. Louttit, Ira H. Reed and F. H. Solinsky for appellant; Nichol, Orr & Nutter and J. P. Snyder for respondent.

COOPER, C.—At the general election held in November, 1900, respondent and appellant were each candidates for the office of supervisor of San Andreas township, in Calaveras county, being supervisor district No. 1. Upon the canvass of the returns, the board of supervisors certified that appellant had received 252, and respondent 250, votes, and officially declared appellant to have been elected. A certificate of election was accordingly issued, and respondent initiated this contest, under the provisions of the Code of Civil Procedure, for the purpose of having a recount. The court filed its findings and decision, declaring that appellant had only received 226, and respondent 228, legal votes, and thereupon adjudged respondent entitled to the office. This appeal is from the judgment, for the purpose of reviewing alleged errors in admitting or rejecting ballots. The questions discussed present some new phases as to the construction of the provisions of the Political Code relative to elections, and marking and counting ballots.

Section 1196, after providing various things as to the preparation of ballots, etc., says: "Nothing in this code con-

tained shall prevent any voter from writing upon his ballot the name of any person for whom he desires to vote for any office, and such vote shall be counted the same as if printed upon the ballot and marked as voted for." Section 1197 prescribes the form of the ballot, with different columns under different headings, as follows:

| Republican Ticket. | Democratic Ticket. | Prohibition Ticket. | Social Labor Ticket. | Blank Column. |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

It is further provided that each political party and independent nominations shall be entitled to a column on the ticket, the columns to be separated by broad solid printed lines, the number to exceed by one the number of separate tickets of candidates to be voted for at the polling place for which the ballot is provided. In the column headed "Blank Column," and under the heading, are the words, "The elector may write in the column below, under the title of the office, the name of any person, whose name is not printed upon the ballot, for whom he desires to vote." The code says such words shall be printed under the heading in the blank column. Section 1205 provides: "He shall prepare his ballot by making a cross after the name of a person or persons for whom he intends to vote, or by writing a name or names in the blank column." Section 1211: "(1) In canvassing the votes any ballot which is not made as provided in this act shall be void, and shall not be counted, but each ballot must be preserved and returned with the other ballots. Any name written upon a ballot shall be counted for the office under which it is written, provided it is written in the blank column. (2) If a voter mark more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office." Section 1215: "No voter shall place any mark upon his ballot by which it may be after-

ward identified as the one voted by him.'' The courts, in the interpretation of the statute, cannot confine themselves to the sole question as to the intention of the voter. The voter might, with the stamp, place a legal mark upon a ballot, and in a legal place, with the evident intention of marking the ballot for identification, but the ballot cannot for this reason be rejected. But, if he place an illegal mark upon the ballot, it must be rejected: Tebbe v. Smith, 108 Cal. 107, 49 Am. St. Rep. 68, 29 L. R. A. 673, 41 Pac. 454. The controlling object of the legislature in adopting the Australian ballot law was to secure an absolutely secret ballot, to the end that each elector may fully express his choice of the candidates to be voted for, uninfluenced by threats or intimidation, and that corruption at the polls may be prevented. Every positive requirement of the statute which, if disobeyed, would defeat its object, must be held mandatory: Tebbe v. Smith, supra; Lauer v. Estes, 120 Cal. 653, 53 Pac. 262. But such minor provisions as do not have that effect should be treated as directory, and a failure of the elector to comply strictly therewith should not be held to invalidate the vote, if the object and spirit of the law is not violated. It is with reluctance that the court will disfranchise the voter, by rejecting his ballot for a purely technical and unintentional violation of some minor detail. All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor: Tebbe v. Smith, supra; Bowers v. Smith, 111 Mo. 45, 33 Am. St. Rep. 491, 16 L. R. A. 754, 20 S. W. 101. And every mark upon a ballot which might possibly be used as an identification does not necessarily demand that the ballot be rejected: Day v. Dunning, 127 Cal. 56, 59 Pac. 196.

There were eight ballots received and counted for respondent, numbered 17, 21, 30, 48, 53, 56, 72, and 80, which it is claimed should have been rejected. Five of these ballots had, part of them, the name ''J. J. Halley,'' and part ''J. Halley'' written in lead pencil in the marginal space at the bottom of the left-hand column, under the heading ''Republican ticket.'' Two of them had the name, likewise, written in a similar place, at the bottom of the column headed ''Prohibition ticket,'' and one in like place at the bottom of the column headed ''Democratic ticket.'' In each of the columns so headed, between horizontal lines, were

the names of the various candidates for presidential electors, representatives in Congress, member of assembly, district attorney, supervisor district No. 1, where such nominations had been made, and above the lower horizontal line, and above the margin in the several columns in which the names were so written, was printed, "For Justice of Peace—Unexpired Term. San Andreas Township. No Nomination," except under the column headed "Democratic ticket," in which the printed name of P. H. Kean was given as the nominee for justice of the peace. It is evident that in each instance the voter intended to vote for "Halley" for justice of the peace. A justice of the peace of San Andreas township was one of the officers to be voted for, as plainly stated in each ballot. The tickets each contain a column headed "Blank Column," and immediately under this heading is printed, as directed by statute, the titles of the various offices, and at the bottom of the column is printed the title of justice, thus:

| For Justice of Peace—Unexpired Term. San Andreas Township. |
| --- |
| |

Under the above title was the proper place to have written the name of the justice for whom the voter desired to cast his ballot. The voter in each instance wrote the name, as he was authorized to do under section 1196. He wrote it under the title of the office in a blank space, but not in the proper space in the blank column. There is not the slightest reason to believe that the name was written with any other intention than to vote for Halley for justice of the peace. It is such a mistake as might easily have been made by anyone using these ballots. The statute expressly provides that any ballot not made as provided for in the act shall be void, with two exceptions: "(1) Any name written upon a ballot shall be counted for the office under which it is written, provided it is written in the blank column," and "(2) if a voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office": Pol.

Code, sec. 1211. The statute nowhere says that writing a name in the wrong column shall invalidate the ballot, but the plain inference of the special provision is that the writ-ten name shall not be counted unless written in the blank column. This is, in substance, to say that the ballot shall be counted for all other officers who are properly voted for. This has been expressly so held as to the second subdivision, where a voter marks more names than there are candidates for an office. It was held that the result was the ballot should not be counted for such office, but should be for all other purposes: Day v. Dunning, 127 Cal. 56, 59 Pac. 196. The same ruling was made in Attorney General v. Glaser, 102 Mich. 401, 61 N. W. 648, 64 N. W. 828. The conclusion herein reached is sustained by the supreme court of Oregon in the late case of Van Winkle v. Crabtree, 34 Or. 477, 55 Pac. 831, 56 Pac. 74. The provision in the Oregon statute, as to a blank column, is somewhat similar to ours. The voter had written the name of one Bradley for constable in the wrong space. The court said: "It is possible that the name so written might afford the means of identifying the person who cast the ballot; but since the elector had the right to express his preference by writing on the ballot the name of the candidate of his choice for the office of constable, we cannot think that his vote should be rendered void because it was written three-sixteenths of an inch above the line set apart for that purpose." We do not think it would be in accord with the reason and spirit of the law to hold that because the voters, although writing the name of Halley for justice under the proper title, wrote it in the wrong space, the consequence must be to declare the entire ballots void. We hold, as the statute declares, that they simply could not have been counted for justice of the peace.

Ballot No. 18, under the appropriate heading under the title of justice of the peace, had the name "J. J. Halley" written across the horizontal line between the title, and not wholly in the blank space above the line, and ballots 15, 27 and 37 contained the same name written in the proper column under the proper title, but below the line. The voter "wrote the name in the blank column," and substantially complied with section 1205. The law does not require the line below the title of the office, and it was in a legal place. These ballots were properly counted for respondent.

Ballots Nos. 49, 33a, 36, and 52 were properly counted for respondent. No. 49 was stamped with a cross opposite "Yes" and also opposite "No" to every proposed constitutional amendment, except the last one at the bottom of the ballot. No. 33a was likewise stamped opposite three of the proposed amendments. No. 36 was likewise stamped opposite one, and No. 52 opposite every proposed amendment. The only consequence of voting "Yes" and "No" on these several amendments was that the ballot could not have been counted either for or against the amendment. It did not render the ballot void in other respects: Day v. Dunning, supra.

Ballot No. 4 was properly counted for respondent. The cross in the upper left-hand corner was clearly made by folding the ballot before the ink had dried on the cross in the upper right-hand corner.

Ballot No. 7 was properly counted for respondent. The dim cross on the right of the ballot in the space in which senate amendment No. 4 is printed was made by the ink being heavy on the opposite cross, and the ballot being folded before the ink had dried.

Ballot No. 45 was properly counted for respondent. In the "Blank Column" under the title of justice of the peace is written in pencil below the line "Blac Colu." The voter stamped a cross on this ballot opposite the Democratic nominee for justice of the peace. In the absence of evidence, we cannot say that "Blac Colu" was not the name of a person, and that the voter intended to vote for him for justice of the peace. The result is that, within the rule of Day v. Dunning, the ballot could not be counted for justice of the peace.

Ballot No. 55, counted for respondent, should have been rejected. It contained a cross stamped opposite the name of respondent in the proper place. It also contained the name "J. J. Halley" written in the blank column under the heading "For Supervisor, District No. 1." It cannot be said for which party the voter intended to vote, and hence the vote must be rejected: Pol. Code, sec. 1211.

Ballot No. 70 was properly counted for respondent. The instrument with which it was attempted to make the cross opposite the name of respondent was too full of ink, and thus made practically a round spot or blot instead of a

cross. But the ink is the same, and the size the same, as the various other crosses made by this voter. Several of the crosses on this ballot are almost round spots of ink, but in all of them the cross can be seen. It can be plainly seen in the blur complained of. This disposes of all the errors complained of by appellant.

As the respondent, after the rejection of ballot 55, still has one majority, it is not necessary to consider respondent's objections to ballots counted for appellant.

The judgment should be affirmed.

We concur: Gray, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.