# Black *v.* Pate.

## Contest of Election to the Office of Sheriff.

1. *Contest of election; limitations as to institution of contest and amendments.*—Under the provisions of the statute which requires that persons contesting an election must file in the office of the probate judge of the county in which the election was held, within fifteen days after the result of said election is declared, a statement in writing of the grounds of contest, verified by affidavit, (Code, § 1697), the statement of a contest can not be amended by the addition of a further ground of contest after the lapse of fifteen days from the time the result of the election is declared.

2. *Same; not competent to prove for whom an elector voted.*—In accordance with the policy established by statute requiring that voting shall be by official secret ballot, it is not competent to ask a witness in a proceeding to contest an election, for whom he cast his ballot, so long as such witness has not waived the secrecy enjoined by statute. This the voter may do because the privilege is personal to him.

3. *Same; same.*—The secrecy required by statute in reference to a person for whom an elector votes, is not applicable to one who has violated the law by voting when he has no right to do so; and, therefore, the disqualification of such person may be proved as an independent fact and as a predicate for showing for whom he voted.

4. *Same; admissibility of evidence; how incompetency shown.*—The fact that one who has voted at an election was not qualified to vote, may be shown by circumstances as well as by direct evidence; and the appearance of the voter may be testified to as indicative of age; but his declarations made after the election as to his qualification, are not admissible in evidence.

5. *Same; same; same.*—In a proceeding to contest the election to an office, where one of the grounds of the contest is that illegal votes were cast by the contestee, the facts that persons who voted in said election came into the precinct, wherein they voted with a contractor and engaged in temporary work, such as building a railroad, and were not seen in said precinct after the work was finished, and that they

[Black v. Pate.]

had no other homes in said precinct than the temporary camps, are circumstances which may be proved as bearing upon the qualifications of such voters.

6. *Same; same; same.*—After proper identification, registration lists and poll lists used in an election are admissible as evidence when the contents tend to establish facts material to the issues involved in the contest; and such lists may also be used as memoranda when necessary to refresh the memory of a witness to such facts, when it is shown that the witness made the lists and knew of their correctness.

7. *Same; same; same.*—In a proceeding to contest an election to office, when it has been established that a particular elector is not a legal voter, any person having requisite knowledge may testify for whom such elector voted, and the voter himself may be required to testify on that subject, unless he claims the privilege of refusing to criminate himself.

8. *Same; same; same.*—In a proceeding to contest an election to an office, where it is established that a certain designated voter was not a legal voter, his declarations and conduct about the time of and recently before casting his ballot may be proved, as tending to establish the facts material to the issue involved in the contest.

9. *Same; how ballot should be marked.*—Under the statute which provides but one way in which the voter may indicate his choice of candidates, and which authorizes the counting of ballot for those persons only "before whose names a cross mark shall have been made," (Code, §§ 1622, 1638), where the cross mark is made on the right hand side of the ticket and after the name of a candidate, such ballot should be rejected and not counted for the person opposite whose name the mark was thus made.

10. *Same; permissible to establish two voting places in one precinct.*—The statute which provides that "the court house is the place of holding elections in the precinct in which it is situated," (Code, § 1585), is not exclusive; and under the statute which authorizes the court of county commissioners to "establish two places of voting in the same election precinct, when it is deemed necessary to the convenience of the voters therein," it is no objection to the counting of ballots cast at another place in the court house precinct than at the court house, when it is shown that such other voting place was duly established by the commissioner's court.

11. *Sheriffs; sheriff appointed by governor eligible to succeed himself.*—The constitutional provision which · makes a sheriff ineligible to such office as his own successor, (Const. Art. V, § 26), is applicable only to a sheriff elected by the quali-

fied electors of his county for a term of four years, and has no application to a sheriff who has been appointed by the governor to fill a vacancy and who has served out the entire term to the date of his election.

12. *Bill of exceptions; appeal; what papers not considered by the court.*—Original papers not copied in the transcript, can not be looked to by the Supreme Court in reviewing a cause on appeal.

APPEAL from the Probate Court of Geneva.

Heard before the Hon. ED. ROACH.

The proceedings in this case were instituted in the probate court of Geneva county by the appellee, B. T. Pate, against the appellant, George W. Black, for the purpose of contesting the election of Black to the office of sheriff of Geneva county. The election was held on August 6, 1900. On August 11, 1900, the said George W. Black was declared elected to the office of sheriff of said county by the board of supervisors of election of Geneva county. The contest proceedings were commenced on August 25, 1900. The declaration of contest as originally filed declared that George W. Black was not entitled to be declared elected sheriff of Geneva county upon two grounds. First. On account of illegal votes; and the contestant avers that illegal votes were given to George W. Black for sheriff, which, if taken from him, would reduce the number of legal votes given him below the number of legal votes given to the contestant. Second. That at the time of holding said election on August 6, 1900, George W. Black was not eligible to the office of sheriff, because he was at said time and had been for several years prior thereto, the sheriff of Geneva county. On September 1, 1900, the contestant filed an amendment to his statement of contest, in which he set out a third ground of contest, which was in substance that in beat 15 of Geneva county, there was fraud practiced by the managers, the clerk or returning officer, or some other person, by reason of which certain votes cast for the contestant were in fact counted as having been cast for the contestee. The contestee demurred to the second ground of contest as contained in the original statement filed by the con-

[Black v. Pate.]

testant, upon the ground that it fails to show that
George W. Black was on August 6, 1900, the sheriff of
Geneva county, and that said ground of contest fails to
allege that George W. Black was his own successor
in the office of sheriff within the meaning of the con-
stitution. The contestee also filed an answer to the
statement as originally filed, in which he admitted the
candidacy for sheriff of the contestant and himself,
and that they were each resident citizens of the county
of Geneva. He then denied in his said answer that
there were any illegal votes cast at said election which
were given or counted for the contestee; but charged
that at said election illegal votes were cast and counted
for the contestant, which, when taken from the vote
given to the contestant, would reduce the number of legal
votes cast for him below the number of legal votes cast
and counted for the contestee. In further answer to
the first ground of contest, the contestee averred that
at said election there were cast for him, in a legal man-
ner, nine legal votes in precinct number 3, which were
thrown out of the count by the managers of said elec-
tion. Further answering the first ground of contest,
the contestee averred that in precinct number 10 of
said county the court house was constituted as the
only place in which the election in said precinct could
be held; but that notwithstanding this fact an election
for said precinct was held at what is known and called
Roney's School House, in addition to the election held
at the court house in said beat, and that at said Roney's
school house there were 41 votes cast, all of which were
counted for the contestant; and that all of said votes
should be deduced from the total number of votes
counted and allowed for the contestant, upon the ground
that the said Roney's school house was not a legal place
for holding said election in precinct number 10.

In answer to the second ground, the contestee denied
that at the time of holding the election on August 6,
he was ineligible to the office of sheriff of said county,
and averred that on March 13, 1897, Dan Vaughan,
who was then the sheriff of said county, and discharg-
ing the duties thereof, died, his death causing a vacancy
in said office; that on March 25, 1897, the deceased was

duly appointed by the governor to fill said vacancy, and
he qualified under said appointment on March 27, 1897,
and that at the time of holding said election he was
sheriff and discharging the duties of said office by virtue
of said appointment, and not by reason of having been
elected thereto by the people of said county.

The contestee also moved the court to strike the
amendment offered to the statement of the contestant,
which was filed on September 1, 1900, from the file upon
the ground that more than fifteen days had elapsed
from the time the declaration of the result of the elec-
tion had been made. The contestee also demurred to
said third ground of contest, which was added by amend-
ment, upon several grounds, and filed an answer de-
nying that there was any fraud practiced by any of the
officers holding said election, or in declaring the result
thereof. It is unnecessary to set out the grounds of
this demurrer.

The court overruled the demurrer interposed to the
first and second grounds of the contest as contained in
the statement, and also overruled the motion to strike
the amendment from the file, and the demurrers to the
amendment. To each of these rulings the contestee duly
and separately excepted.

. On the trial of the case it was shown that both the
contestant and contestee were resident citiens of Geneva
county for several years prior to the election on August
6, 1900, and were qualified electors. That at the elec-
tion in August, 1896, Dan Vaughan was duly elected
and qualified as sheriff of Geneva county; that on March
13, 1897, said Vaughan, while said sheriff and discharg-
ing the duties of his office, died, leaving a vacancy;
that on March 25, 1897, the contestee was appointed by
the governor of Alabama to fill said vacancy caused by
the death of said Vaughan, and on March 27, 1897,
qualified and received his commission as such sheriff;
that on August 6, 1900, said George W. Black was dis-
charging the duties of the office of sheriff under and by
virtue of his appointment and not by any election of
the people. It was further shown that the court house
was located in beat No. 10; that there had been, some

years before the general election in August, 1900, a new polling place in addition to the court house established in beat No. 10 at what is known as Roney's school house; and that on the day of the election on August 6, 1900, the polls were legally and duly opened at said Roney's school house, as well as at the court house; and there were a number of votes cast for the contestant at Roney's school house. It was also shown that in beat No. 3 there were several ballots which were voted for the contestee that were ejected and not counted by reason of irregularities in the marking of them. These ballots showed that on each of them the cross mark made upon the ticket, while made opposite the name of George W. Black, was made on the right hand side of the ticket, that is, after the name of Black, and not before it; and that there was no other mark opposite any of the other names which appeared as candidates for the office of sheriff.

The evidence for the contestant tended to show that in several of the beats of the county people voted who were not entitled to vote and many illegal votes were counted for the contestee which should not have been counted for him, and that if the votes which were illegally cast were rejected, the contestant would have received a majority of the legal votes cast in the county for the office of sheriff. It was shown that the majority declared for George W. Black in the vote of the whole county was 11. There was also evidence introduced by the contestant tending to show fraud and corruption on the part of the managers or returning officers or clerks, or some other person in reference to the votes cast in some of the beats of the county; some of the witnesses introduced by the contestant testified that in beat 15 of said county the tally sheets on which the votes were counted when the boxes were opened had been altered; that erasures were made in the tallis or count of the votes gives to the contestant, and that the tally sheets were not in the same condition as when they were made by the clerks at the polling places in the beats and locked in the ballot boxes and delivered to the returning officer.

The evidence for the contestee tended to show that

[Black v. Pate.]

there were no illegal votes cast for him in said election, and there were none counted for him; that there was no fraud or corruption on the part of the managers or any officers of the election, or on the part of any one else; that many illegal votes were cast for the contestant and counted for him, and that if these illegal votes so cast for the contestant and counted for him were rejected, a majority of the contestee over the contestant would be much greater than that declared by the board of supervisors.

During the examination of J. J. Russell who was one of the inspectors of the election in beat 15, he was asked by the contestant the following question: "For whom did you vote at said election for the office of sheriff?" The contestee objected to this question upon the grounds, 1st, that it called for illegal testimony; 2d, that it had not been shown that the witness was an illegal voter; and, 3d, because it is against public policy for a voter to testify for whom he voted. The court overruled this objection, and the contestant duly excepted. Upon the witness answering that he voted for the contestant, the contestee moved to exclude his answer upon the same grounds assigned in support of his objection to the question, and duly excepted to the court's overruling his objection. This witness was further asked by separate questions for whom had several designated persons voted for the office of sheriff at said election. The contestee objected to these questions upon the same grounds as are interposed to the other question, and in addition thereto the following ground: Because the law does not permit an official of an election, who acquired his knowledge by virtue of his office, to discuss how an elector cast his vote. The court overruled the objection, and the defendant duly excepted. Upon the witness answering the question by stating how several persons inquired about voted, the contestee moved to exclude the answer upon the same grounds. The court overruled the motion, and the contestee duly excepted. Similar questions were propounded to several witnesses in reference to different beats in the county, and the same objections were interposed to each

of such questions, and the contestee separately excepted to the court's overruling each of such objections.

Ben Lee, a witness for the contestant, testified that he lived in beat 13, in Geneva county, and was the marker in that precinct at the August election, 1900; that Tom Chapman, a negro who lived in said beat, came to the polls to vote, and that the witness marked his ticket for him; that Chapman voted for George W. Black for sheriff; that there were four other negroes there who voted at that box that day. The contestant asked the witness the following question: "State whether or not in your judgment, from his appearance, Tom Chapman was over or under 21 years of age." The contestee objected to this question, because it called for illegal evidence, and for the opinion of the witness, and because the age of a man can not be proved in that way. The court overruled the objection, and the contestee duly excepted. The witness answered that in his judgment Tom Chapman was 16 or 18 years of age. The contestant moved to exclude this answer upon the same grounds and duly excepted to the court's overruling his motion. During the further examination of this witness, the contestant asked him for whom the three other negroes voted for sheriff, whose tickets he marked. The contestee objected to this question on the ground that it called for illegal testimony, and that it was against public policy for one party to discuss how and for whom another voted. The court overruled the objection, and the contestee duly excepted. Upon the witness answering that all of them voted for George W. Black, the contestee moved the court to exclude the answers upon the same grounds as were assigned in the objection, and duly excepted to the court's overruling the motion.

J. M. Lee, as a witness for the contestant, testified that he lived in beat 13, and was the manager in said beat at the August election, 1900; that there were four other negroes besides Tom Chapman who voted at that election in that beat; that these negroes were working on a railroad with a contractor; that he was acquainted with the citizens of the beat, and that in his opinion said negroes did not reside in said beat; that

they had no other residence in the beat than the railroad camps; that he did not know of any of them being in the beat before the railroad was commenced, and that since the election they had all moved away when the contractor went to another place on the railroad to continue work; that not one of said negroes ever voted in the beat before the August election, 1900; that he did not know where they came from nor when they came into the beat. The contestant then asked the witness the following question: "Did you hear either of said parties say where he came from?" To this question the contestee objected upon the ground that it called for illegal, incompetent and hearsay evidence. The court overruled the objection, and the contestee duly excepted. The witness answered that some ten or twelve days after said August election he was at the railroad camps and heard one of the negroes say that he came from Florida, and another say he came from Mississippi; that the negroes making these remarks were among those who voted at said election in beat 13. The contestee moved to exclude the said answer of this witness from the jury, upon the ground that it was illegal, incompetent and hearsay evidence. The court overruled the objection, and the contestee duly excepted.

Upon the examination of Jere Merritt, as a witness for the contestant, and after he had testified that he was the manager at the August election in beat 10 in Geneva county, and that he remembered that a negro by the name of John Williams came to vote in said precinct, he was asked the following question: "What, if anything, he heard said John Williams say at the time as to where he came from?" The contestee objected to this question on the ground that it called for illegal and hearsay evidence, and because the residence of a man could not be proven in this manner. The court overruled the objection, and the contestee duly excepted. The witness answered that John Williams stated, when he offered to vote, that he worked at McDuffie's turpentine still. The court overruled the contestee's motion to exclude this answer, which was based

upon the same grounds of objection as were interposed to the question, and to this ruling the contestee duly excepted. It was shown by other evidence that Mc-Duffie's turpentine still was in beat 14 and that said John Williams resided in beat 14. This witness further testified that Dan Glover, a negro, voted in beat 10 in the August election in said county; that said Glover came direct from Florida to Geneva county, and had not been in said county a year before the August election.

A. B. Jernigan, a witness for the contestant, testified that he knew the said Dan Glover, who voted in beat 10 in the August election, and said witness was then asked the following question: "Just prior to and on or about the election time in August, did you hear Dan Glover express himself as to whom he was for for sheriff?" The contestee objected to this question, because it called for illegal and hearsay testimony. The court overruled the objection, and the contestee duly excepted. The witness answered that said Glover expressed himself as being for George W. Black for sheriff. The contestee moved to exclude this answer, and duly excepted to the court's overruling his motion.

The contestant introduced in evidence several witnesses, to each of whom contestant propounded the following question: "For whom did you vote. for the office of sheriff at the August election?" The contestant stated that such question was asked each of such witnesses in order to show that the persons claimed by contestee to be illegal voters at said election in said prencinct voted for the contestee. The contestee separately objected to each of such questions propounded to the several witnesses upon the ground that it called for illegal evidence; that it was not shown that said vote was illegal when cast, and it was against public policy for a person to tell how and for whom he voted, and because the witness could not tell how he voted as a means of ascertaining how some other voter cast his vote. The court separately overruled each of such objections, and the contestee separately excepted to each of such rulings. Upon each of the witnesses to whom the separate question was asked answering that

[Black v. Pate.]

he voted for the contestant, the contestee moved the court to exclude the answer upon the same grounds as were assigned to the question, and duly excepted to the court's overruling his motion. Not one of the witnesses who was interrogated claimed the right on the stand to refuse to disclose for whom he voted for sheriff.

It was shown by the evidence that in beat No. 7 there were a great many negroes designated as the Ruffin negroes, whom the evidence for the contestant tended to show voted for the contestee. The evidence for the contestant further tended to show that these negroes were laborers upon the railroad that was being constructed through the county, and that they had come into the county with the contractor within three months before the election, but had not resided in the beat thirty days prior to said election. It was further shown that they had no residence in said county or beat except in the railroad camps. The contestant sought to prove by several witnesses that these negroes had left the beat a short time after said election. Upon the introduction of this evidence the contestee objected upon the ground that it was illegal, irrelevant and immaterial. The court overruled the objection and allowed the evidence to be introduced.

One Ed Hardwick, a witness introduced by the contestant, testified that he was registrar in beat No. 7. He identified the registration book in which were registered the electors who voted in beat No. 7 at the August election as the one kept by him and testified to its correctness. This witness testified that he knew the Ruffin negroes, but he did not remember the names of any of them, except by reference to the registration books. The witness was thereupon asked to call the names of the Ruffin negroes whom he registered, and upon his commencing to read their names from his registration book, the contestee objected upon the ground that it was illegal, and because the witness could not look to the registration book to refresh his memory. The court overruled the objection, and the contestee duly excepted. The said witness then read from the reg-

istration book the names of the Ruffin negroes who had registered on the election day in beat No. 7. The contestant then introduced the registration book from beat No. 7 as it had been identified and shown to have been correct by the registrar Hardwick, for the purpose, as stated at the time, of identifying the parties served on the contestee as illegal voters in beat No. 7. To the introduction of this book in evidence the contestee objected on the ground that it was illegal, irrelevant and immaterial. The court overruled the objection, and the contestee duly excepted. The contestant also introduced, against the objection and exception of the contestee, the poll lists of beat No. 7, and beat No. 15, and beat No. 13.

Upon the hearing of all the evidence the judge of probate before whom the case was tried without the intervention of a jury, rendered judgment in which he declared that George W. Black was ineligible to be elected to the office of sheriff of Geneva county at the August election, 1900, and further decreed that B. F. Pate was duly elected for the office of sheriff and was entitled to said office. From this decree the contestee appeals, and assigns as error the many rulings of the trial court to which exceptions were reserved.

ESPY, FARMER & ESPY and C. D. CARMICHAEL, for appellant.—It is the policy of our law that every man shall have the right to have the casting of his ballot kept a secret, the only exception to this rule is where the ballot cast is illegal, in which event the voter may be forced to disclose how or for whom he voted. No one but himself can waive this privilege, and, until he gives his consent, it cannot be legally ascertained for whom he cast his vote.—Code of 1896, § 1669; McCrary on Elections, 489, 490; *Pedigo v. Grimes,* 113 Ind. 148.

It was incompetent for the contestant to prove whether or not several voters who are shown to have voted in the election had other homes than the camp along the railroad upon which they were working. The question calling for such testimony sought to elicit evidence which would shed no light on the issue involved.—Mc-

Crary on Elections, § 98; *Shaeffer v. Gilbert,* 73 Md. 66; *Pedigo v. Grimes, supra; In re Collins,* 64 How. Prac. 63.

W. O. MULKEY, J. J. MORRIS and SOLLIE & KIRKLAND, *contra.*—The evidence relative to the citizenship of the negroes who worked on the railroad was competent. Each piece of the testimony introduced in reference to these voters was material and legal evidence tending to shed light upon the fact that these negroes were not legal voters in the precinct in which the record shows they voted.—*Griffin v. Wall,* 32 Ala. 149; *Bradston v. Virginia,* 81 Ill. 541; *Tarbox v. Sughrue,* 36 Kan. 225; *Blue v. Peter,* 40 Kan. 701; *People v. Teague,* 106 N. C. 576; *Davis v. State,* 75 Tex. 42.

SHARPE, J.—Contests of election being unauthorized except by statute, any material departure from the statutory mode of instituting and conducting such contests is likewise unauthorized. This is especially true in respect of the limitation of time contained in the statute regulating contests for the office of sheriff which provides: "The person contesting must file in the office of the judge of probate of the county in which the election was held, within fifteen days after the result of the election has been declared, a statement in writing of the grounds of contest verified by affidavit."—Code, § 1697. This and several other provisions of the statute are made to hasten the termination of such contests in view of the fact that it is important to the public as well as the parties that the office be administered by the person rightfully entitled thereto. Introducing new grounds of contest after the prescribed time, would naturally be productive of surprise to the contestee and of disadvantage to him, unless the trial be postponed to enable him to meet such grounds. Hence the legislature, assuming that fifteen days would be sufficient for one acting with diligence to learn of matters invalidating a declaration of election, has made no provision for filing grounds of contest after fifteen days therefrom. The statutes authorizing amendments to

pleadings in ordinary suits cannot be applied to enlarge the time so expressly limited.

As originally exhibited the present petition preferred only two grounds of contest, first, that illegal voters were given to the contestee which, if taken from him, will reduce the number of legal votes given him below the number of legal votes given to the contestant; second, that the contestee is ineligible. The amendment averring fraud on the part of election officers not having been offered before the lapse of fifteen days from the declaration, was improperly allowed. This amendment resulted in the admission of evidence to sustain its averments which would not have been admissible under the original petition; and since this court cannot known how far the trial court was thereby influenced in its findings of fact the errors of allowing the amendment and of admitting evidence offered thereunder by the contestant must operate to reverse the judgment. *Bank v. Chaffin,* 118 Ala. 246; *Miller v. Mayor,* 124 Ala. 434.

As preventive of bribery, intimidation and other improper influences to which voters might be subjected, our legislature has adopted the policy now widely prevailing elsewhere, of obscuring the identity of persons and measures for which any particular vote is cast at popluar elections. It has declared: "The voting shall be by secret official ballot printed and distributed as provided in this article, and no ballot shall be received or counted in any election except it be provided as herein prescribed."—Code, § 1605. Among other provisions, which to preserve secrecy, are industriously inserted in the election laws, is one making criminal the disclosure by an election officer, who by his office has gained knowledge of a vote, of how any elector may have voted at any election.—Code, § 4681. The maintenance of this policy requires the courts to abstain from inquiry as to the person for whom a legal voter has cast his ballot so long as the voter has not waived secrecy.—McCrary Elec., § 488; 10 Am. & Eng. Ency. Law, 886 *et seq.* This he may do because the privilege is personal to the voter. Those who violate the law by voting when they have no right to do so,

are not so protected; hence their disqualification may be proven as an independent fact and also as a predicate for showing who received the votes. For the latter purpose the fact of illegality must be determined by the court as in other cases where the admission of evidence depends on the establishment of a preliminary fact.—*People v. Teague,* 106 N . C. 576. *Prima facie* it is presumed that one who voted was qualified to vote. McCrary on Elec., § 467. The contrary may be shown by circumstantial as well as by direct evidence. The appearance of the voter may be testified to as an indication of age, but his declaration made after the election as to his qualifications are not admissible.—*Commonwealth v. Woelper,* 3 Serg. & R. (Pa.) 29, 8 Am. Dec. 628; *Mann v. Cassidy,* 1 Brewst. (Pa.) 11. That persons who voted came into the precinct with a contractor, engaged on temporary work, such as building a railroad, and were not seen there after the work was finished, and likewise the fact that they had no other homes in the precinct than temporary camps are circumstances that may be proven as bearing on such voters' qualifications.—*People v. Teague, supra.* After proper identification, registration lists and poll lists of an election are admissible as evidence when the contents tend to establish facts material to the issues involved in a contest.—*Echols v. State,* 56 Ala. 131. They may also be used as memoranda when necessary to refresh the memory of a witness about such facts, where it is shown that the witness made the lists and knows of its correctness.

When it has been established that a voter was not a legal elector, any person having requisite knowledge may testify as to whom he voted for, and the voter may himself be required to testify on that subject unless he claims the other and different privilege of refusing to criminate himself.—McCrary Elec., §§ 492, 494. His declarations and conduct about the time of and recently before casting his ballot may also be such as to shed light on the question and, when so, may be proved.

Referring to counter charges made by the contestee, we are of the opinion that the ballots marked opposite

[Black v. Pate.]

but after contestee's name were properly rejected. It may be that slight irregularities in the marking of ballots such as neither create uncertainty as to the voter's choice nor serve as distinguishing signs, violative of secrecy, would not be cause for discarding ballots, but it is otherwise where the marks used are inappropriate to express the voter's intention or are so distinct and individual in character as to furnish means of identifying the ballot as that of the particular voter. *Ellis v. Glaser*, 102 Mich. 396; *Parker v. Orr*, 158 Ill. 609, 30 L. R. A. 227. The statute provides but one way in which a voter may indicate his choice of candidates which is by placing a cross mark "before the name of the candidate" (Code, § 1622) ; and it authorizes the counting of ballots for those persons only "before whose names a cross mark shall have been made." (*Ib.* 1638.)

Objection is urged by contestee to counting ballots cast at Roney's school house for that the court of county commissioners was without power to establish a polling place in the court house beat in view of section 1585 of the Code which declares: "The court house is the place of holding elections in the precinct in which it is situated." Though this provision is mandatory so far as to make the court house a polling place, we think it was not intended to and does not withhold from the commissioners' court the power to provide in the court house precinct a polling place in addition to the court house, under section 1582 of the Code which authorizes it to "establish two places of voting in the same election precinct when it is deemed necessary to the convenience of the voters therein."

The constitution declares: "A sheriff shall be elected in each county by the qualified electors thereof, who shall hold his office for the term of four years unless sooner removed, and shall be ineligible to such office as his own successor."—Const., Art. V, § 26. Here the person made ineligible is designated by the pronoun "who," which can have relation to no other than the person previously mentioned, viz., the sheriff elected by the qualified electors for the term of four years.

[Davis *et al.* v. Williams *et al.*]

Without an unwarranted extension of its terms this provision cannot be made to include or to render ineligible to succeed himself, one who has held the sheriff's office only by appointment for a fractional term.

Original papers not copied into the transcript cannot be looked to in reviewing a cause on appeal.—*Pruitt v. McWhorter*, 74 Ala. 315; *Wright v. Dunklin*, 83 Ala. 317. This transcript contains no copies of ballots or tally sheets and, therefore, the package sent with it and said to contain such papers has not been examined.

Reversed and remanded.