Appeal from Sixth District.

## BEAUREGAARD v. GUNNISON CITY *et al.*

No. 2897.   Decided October 16, 1916 (160 Pac. 815).

1. WITNESSES—STATUTORY IMMUNITY—SCOPE.  Under Comp. Laws 1907, section 912, providing that any person offending against the election laws may be compelled to testify in any trial, etc., in the same manner as any other person, with immunity from indictment, prosecution, or punishment for the offense as to which testimony was given, such immunity is complete, and is not limited to cases where one is called as witness in prosecution of a third person for violating election laws, and the one called may have been himself concerned in the offense charged against accused, and the privilege against self-incrimination cannot be invoked by such an offender in an election contest. (Page 518.)

2. ELECTIONS—QUALIFICATION OF VOTERS—CHANGE OF RESIDENCE.  Under Laws 1911, c. 106, section 53, qualifying any person to vote at a city or town election who was qualified to vote at the last city or town election in the voting district in which he offers to vote, section 60 of said chapter, providing that the state laws relating to elections in cities, towns, and general elections shall apply in all matters not specified, where applicable, and the election laws, Comp. Laws 1907, sections 812-846, making it a necessary qualification of a voter that he reside in and also be registered in or transferred to the election district in which he votes, and making it a ground for challenge "that he does not live in the election district," if a person was a qualified voter in a particular election district by having complied with registration laws of the state, he may rely upon that registration in voting therein at any election held under said chapter 106, if he still resides therein, but if he has ceased to be a resident thereof, he is no longer eligible to vote there, but may have his registration transferred to the district in which he resides, as provided by Comp. Laws 1907, section 812. (Page 521.)

3. ELECTIONS—PRESUMPTION—RESIDENCE OF MARRIED MAN.  The residence of a married man is presumed to be in the voting district where his wife lives.  (Page 522.)

4. ELECTIONS—PRESUMPTION—RESIDENCE OF VOTER.  The presumption is that one voting at a previous election in a certain voting precinct, in the absence of proof of change of residence, is still a resident of that voting precinct.  (Page 523.)

5. INTOXICATING LIQUORS — LOCAL OPTION — CONTESTS — PRESUMPTION—VOTING WITH PARTY. In an election contest on the sole issue of allowing sale of intoxicating liquors, the presumption was that a voter who had previously affiliated and acted with the "drys" voted such ticket at the election. (Page 524.)

6. ELECTIONS—CONTEST—EVIDENCE—ADMISSIBILITY—DECLARATIONS. A voter's declarations and conduct about the time of and recently before casting his ballot may not be proved, in an election contest in which he is not interested as a party, as tending to establish how he voted, unless such declarations are part of the res gestae as determined from all the evidence as in other cases of res gestae. (Page 525.)

7. INTOXICATING LIQUORS—CONTEST—PARTIES—DEFENDANT. In a city election contest on the issue of allowing sale of intoxicating liquors, where the city authorities refused to defend the election, an elector and resident of the city was allowed to do so on his own behalf, in view of the statute providing that an elector may file a contest, and that "any proposition submitted to the vote of the people may be contested." (Page 526.)

Appeal from District Court, Sixth District, *Hon. Jos. H. Erickson,* Presiding Judge.

Election contest by Marenus Beauregaard against Gunnison City, in which E. L. Swalberg filed answer on his own behalf. From judgment affirming the election, plaintiff appeals.

REVERSED AND REMANDED.

*Lewis Larson* and *R. A. McBroom* for appellant.

*J. W. Cherry* and *Dilworth Woolley* for respondents.

FRICK, J.

This is an election contest which was instituted by plaintiff as an elector of Gunnison City pursuant to Comp. Laws 1907, section 914. The election was held pursuant to Laws Utah 1911, c. 106, sections 57 to 63, inclusive, wherein it is provided that elections may be called and held in the cities, towns, and county voting units of this state for the purpose of determining whether intoxicating liquors shall or shall not be sold therein. Such elections may be called and held not oftener

than once in every two years.. An election was called and
duly held in Gunnison City, a city of the third class in San-
pete county, this state, on the 29th day of June, 1915, to de-
termine the question of whether intoxicating liquors should
or should not be sold in said city for the ensuing two years.
After the election the votes were duly canvassed as provided
by law. Such canvass disclosed that the number of votes
for and against sale were tied; that is, there was an equal
number of votes cast both for sale and against sale. Plain-
tiff, within the time required by section 914, *supra*, instituted
this contest, making the city, the mayor, and the city council-
men, as the board of canvassers of the city, and the city re-
corder parties to the action. As a ground of contest the plain-
tiff alleged that illegal votes were cast at said election, and if
such votes were excluded from the count as they should have
been, the result of the election would be in favor of sale.
Neither the city nor any of its officers appeared in the action,
except E. L. Swalberg, who, however, did not appear for the
city nor the other defendants, but did so on his own behalf.
By leave of court first had and obtained he filed an answer
and defended against the contest. A trial to the district
court of Sanpete county resulted in findings and judgment
affirming the election held as aforesaid, and the plaintiff ap-
peals.

The principal assignments of error relate to the rulings of
the district court in the exclusion of certain evidence proffered
by the plaintiff. The plaintiff attempted to prove that certain
persons had voted illegally because they were not qualified
electors of the voting district in which they had cast their
ballots. He called such persons as witnesses, and offered to
prove by them that they did not reside within the voting dis-
trict in which they had cast their ballots at the election in
question. The witnesses all refused to answer the questions
propounded to them respecting their residence, upon the al-
leged ground that in answering them they might incriminate
themselves, in that by doing so they might disclose the fact
that they had voted illegally, and thus would be subject to
prosecution and punishment under our election statutes.
Plaintiffs' counsel insisted that the claim made by such wit-

nesses was without merit, since, under our statute, even though the witnesses had voted illegally, they, nevertheless, would be immune from prosecution and punishment, and therefore could not legally claim the privilege and refuse to answer the questions. The district court, however, sustained the wit-nesses' claims, and ruled that they need not answer the questions propounded to them. Counsel excepted to the rulings, and they now insist that the court erred in that regard. In this state it is an offense punishable by fine or by imprisonment in the state prison, or both, for any person to vote who is not legally entitled to do so. Comp. Laws 1907, sections 894, 895. By section 912 it, among other things, is provided:

"Any person so offending against any provision of this title is a competent witness against any other person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or investigation in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying except for perjury in giving such testimony. A person so testifying shall not thereafter be liable to indictment, prosecution, or punishment for the offense with reference to which his testimony was given, and may plead or prove the giving of testimony accordingly, in bar of such indictment or prosecution."

Counsel for the defendants, however, contend that the immunity applies only in cases where a certain person stands charged with having violated the election laws and another person is called as a witness who himself may have been concerned in the offense charged against the accused. We think the contention is without merit. We are of the opinion that the statute affords complete immunity from all prosecutions and punishment for every offense denounced by our election laws, where the witness is not on trial, and that it was so intended by the Legislature in adopting the immunity clause. The immunity clause which we have quoted above was first enacted in 1896. Laws 1896, p. 157. It was there, however, limited to the offenses denounced in three particular sections. In 1898, the immunity was enlarged so as to cover all the offenses denounced by our election and reg-

istration laws. That is, the immunity was enlarged so as to cover all persons "offending against any provision of this title," which is title 18 of the Revised Statutes of Utah of 1898. That title is composed of nine chapters, and includes all the sections numbered from 780 to 928, inclusive, of said Revised Statutes, and covers all laws relating to elections and registration. The immunity has therefore been in effect in its present form only since January 1, 1898, when the Revised Statutes aforesaid went into effect. The immunity clause of section 912, *supra*, is a transcript of the Purity of Election Law of California of 1893, except that in California the provisions of the section, like our law of 1896, was limited to certain sections. See *Ex parte Cohen*, 104 Cal. 524, 38 Pac. 364, 26 L. R. A. 423, 43 Am. St. Rep. 127. In that case it was directly held that, by reason of the immunity, questions similar to those propounded to the witnesses in this case were not subject to the constitutional privilege. It is not possible to distinguish that case from the case at bar. It was there held that the statute afforded a complete immunity from prosecution and punishment in all cases where the witness is not himself on trial, but is called in a proceeding prosecuted against another or others. It is obvious that the nature or character of the proceeding, or who the parties are, so long as it is an election contest in some form, is not material, and the witness must testify in such a proceeding although his testimony might incriminate him if he were on trial himself. As a matter of course if he stood charged personally, and were on trial, then the privilege would apply with full force. The statute, however, affords the witness a full and complete immunity for all of his acts or conduct in violation of the election laws. When such is the case there is no longer any reason why the privilege should prevail, and hence it cannot be invoked by the witness. This seems to be the holding of all the courts. The question, on several occasions, came before the Supreme Court of the United States. In the case of *Brown* v. *Walker*, 161 U. S. 595, 16 Sup. Ct. 646, 40 L. Ed. 819, Mr. Justice Brown, after discussing the privilege clause of the federal Constitution, and in applying the immunity granted by certain laws to certain witnesses, says:

Beauregaard v. Gunnison City et al., 48 Utah 515.

"The clause of the Constitution in question is obviously susceptible of two interpretations. If it be construed literally, as authorizing the witness to refuse to disclose any fact which might tend to incriminate, disgrace, or expose him to unfavorable comments, then as he must necessarily to a large extent determine upon his own conscience and responsibility whether his answer to the proposed question will have that tendency (citing cases), the practical result would be that no one could be compelled to testify to a material fact in a criminal case unless he chose to do so, or unless it was entirely clear that the privilege was not set up in good faith. If, upon the other hand, the object of the provision be to secure the witness against a criminal prosecution, which might be aided directly or indirectly by his disclosure, then, if no such prosecution be possible—in other words, if his testimony operate as a complete pardon for the offense to which it relates—a statute absolutely securing to him such immunity from prosecution would satisfy the demands of the clause in question."

In 40 Cyc. 2543, it is said:

"There is no constitutional objection to a statute which deprives a witness of the right to refuse to give testimony showing that he has committed a crime, where the statute also grants to him, as a consequence of such testimony, complete immunity from prosecution or punishment for the crime so disclosed, and under such a statute the witness may be compelled to testify."

The immunity granted by section 912, *supra*, could not well be made more sweeping than it is in protecting a witness from prosecution and punishment. Moreover, as we have seen, it was first adopted in its present form in 1898. It seems it was first enacted in California in 1893. The case of *Ex parte Cohen, supra,* was decided in November, 1894. There are strong grounds for holding, therefore, that in adopting the statute the Legislature also adopted the construction placed upon it by the Supreme Court of California. The same result would follow were it to be held that it was adopted first in 1896, as before stated. We are of the opinion, therefore, that the court committed manifest error in ruling that the witnesses could claim the privilege, and in not requiring them to answer the questions propounded to them respecting their residence, etc. We remark that we have treated the questions propounded to the witnesses concerning their place of residence as though the answers thereto might, in and of

themselves, incriminate them. Whether such would or would not be the case under the circumstances is not now material, and is not decided.

Counsel for the defendants, however, insist that the witnesses in question were qualified electors at the election in question, although at the time of the election they may not have resided within the election districts in which they cast their ballots. This contention is based upon section 53, c. 106, Laws 1911, *supra*, which, so far as material here, provides:

"Any person shall be qualified to vote at any election held' in any city or town hereunder who was qualified to vote at the last city or town election in the voting district in which he offers to vote; * * * such qualification shall be shown by the official register used at such last city, town or general election."

In section 60 of the same chapter it is also provided that "the provisions of the election laws of the state, relating to elections in cities, towns and general elections * * * shall apply" in "all matters and proceedings not herein specified," so far as the same are applicable.

Counsel contend that under the provisions of section 53, *supra*, although the voter may have lost his residence in a voting district at the time of holding an election under chapter 106, yet, if he was a qualified voter in such district at the preceding city election, he is still a qualified voter. We cannot so construe the section. Under our election laws a part of the necessary qualifications of the voter is that he reside in the voting district at the time of the election, and that he be registered therein, or that his registry be transferred thereto some time before the day of election, and it is made a ground of challenge "that he does not live in the election district." Comp. Laws 1907 sections 812-846. All those provisions apply to all elections, general or special, and all must be given effect if possible. As we view it, therefore, the proper construction of section 53, *supra*, is that if a person was a qualified voter in a particular election district by having complied' with the registration laws of this state, he may rely upon that registration at any election held under chapter 106, provided'

he still resides within the district in which he offers to vote, but if he has ceased to be a resident of such district, he may have his registry transferred to the district in which he' resides, as provided in section 812, and may vote upon such transfer as in other cases.   The voter, however, may not, after he has lost his residence in a certain voting district, return thereto and cast his ballot therein merely because he was qualified to do so. at the last preceding city election.   All that the statute means is that the voter need not re-register for any election held under chapter 106, and that the preceding registry for the city election is sufficient qualification in that regard.   If a voter has removed from the district, however, he may not return thereto to vote at such an election any more than he could do so at any other election.   From the foregoing it necessarily follows that if there were any votes cast at the election in question by those who did not live within the voting district as required by our statute, at the time of the election, in which they cast their ballots, such ballots were illegal, and should not have been counted.

It is next contended that the court erred in holding that the vote of one Henry Knighton was legal.   On the day of the election, and for more than sixty days prior thereto, Knighton, who is a married man, lived with his wife, Emily Knighton, in voting district No. 1.   He voted in district No. 2.   Now, in view that the court ruled that Mr. Knighton need not testify concerning his place of residence, counsel rely upon the presumption that a husband's residence is that of his family.   In 14 Cyc. 861, it is said:

"The domicile of a married man is presumed to be at the place where his wife or family resides."

If Mrs. Knighton lived, that is, was domiciled, in voting district No. 1, the presumption is that her husband also lived there, and the presumption would prevail until the contrary was shown.   14 Cyc. 558; *State* v. *Savre,* 129 Iowa, 122, 105 N. W. 387, 3 L. R. A. (N. S.) 455, 113 Am. St. Rep. 452; *Guggenheim* v. *City of Long Branch,* 80 N. J. Law, 246, 76 Atl. 338.   In *State* v. *Savre, supra,* the Supreme Court of Iowa, in referring to the question of residence, says:

"There is no absolute criterion by which to determine one's place of residence. Each case must depend on its particular facts or circumstances. Three rules, however, are well established: (1) That a man must have a residence or domicile somewhere; (2) when once established, it remains until a new one is acquired; and (3) a man can have but one domicile at a time."

We are of the opinion that Henry Knighton's residence presumptively was in voting district No. 1, where his wife lived, and that the presumption should prevail until the contrary is shown by proper evidence.

What we have said about Knighton also applies to one Sylvester Pierce. With regard to the latter it was shown that in 1914, at the general election, Pierce lived in Fayette, and that in that year he was registered and voted there, Fayette is some miles north of Gunnison City, and constitutes a separate and distinct political organization and voting precinct. Mr. Pierce, however, voted at the election in question in Gunnison City upon a registry he had there in 1913. There was no proof that Mr. Pierce had changed his residence after voting in Fayette in 1914. We think that, in view that Mr. Pierce had established a voting residence in Fayette in 1914, and not having been thereafter registered in Gunnison City as a voter therein, the presumption should prevail that he was still a resident of Fayette until that presumption is overcome by proper evidence.

But merely to show that Mr. Knighton and Mr. Pierce voted illegally would not necessarily change the result of the election. Counsel for plaintiff, therefore, called Mr. Pierce as a witness on behalf of the plaintiff and attempted to show by him that he had acted and affiliated with what, in the record, is called the "drys"; that is, those who voted against the sale of intoxicating liquors in Gunnison City. The witness, however, claimed his privilege, and, while the court required him to answer certain questions, it thereafter struck out all the evidence as privileged. If Mr. Pierce at the time of the election was a legal voter in Gunnison City, he could not be questioned with regard to how he voted, since that claim would be within his privilege. In other words, he could claim the privilege or he could waive it as he saw fit. If he

was not a legal voter in Gunnison City at the time of the election, and therefore had cast an illegal ballot, then he could not claim the privilege unless he might do so upon the ground of self-incrimination. We have, however, already held that he, the same as other voters, would be immune from prosecution and punishment, and therefore the court erred in sustaining the claimed privilege and in striking out his testimony.

We are also of the opinion that the evidence was sufficient to raise a presumption that Mr. Pierce had voted against the sale of intoxicating liquors. It was clearly shown that he was affiliated and acted with the "drys"; and it was shown that he was quite active in that regard. This is not a case where it is necessary to hold that because a certain voter has affiliated with a certain political party, from that fact alone it may be inferred that he voted for a particular candidate of his party. There may be many good and sufficient personal reasons why a voter did not vote for a particular candidate who was upon his party ticket, although he may have voted that ticket. In this case, however, all there was to vote for was the party ticket. That is, there was but one proposition, and that is whether the voter was for or against sale. We think therefore, there is no other reasonable inference under the circumstances than that Mr. Pierce did vote the ticket of the party with which he affiliated and acted on the day, and prior to the day, of election. That such an inference arises under the circumstances of this case is, we think, generally held by the courts. In *Tunks* v. *Vincent*, 106 Ky. 829, 51 S. W. 622, the evidence respecting the voter's political affiliation and conduct was much weaker than in the case at bar, yet the Supreme Court of Kentucky held that the evidence was sufficient to justify an inference that the voters, not only had voted his party ticket, but that he had also voted for the particular candidate whose election was in question. In *Rexroth* v. *Schein*, 206 Ill. at page 97, 69 N. E. at page 247, the Supreme Court of Illinois, in passing upon this question, said:

"The party affiliations of the voter have been uniformly held sufficient to raise the presumption that he cast his ballot for the

nominees of the political party of which he was a member, and this proposition, in the absence of any countervailing proof or circumstances, is, it seems, to be accepted as determining for whom the voter cast his ballot" (citing a number of cases).

It is, however, not necessary to go to that extent in this case. It is sufficient to hold, and that is all we do now hold, that the evidence as it now stands is sufficient to justify a finding that Mr. Pierce voted the ticket of the political organization he affiliated and acted with on the day of, and prior to, the election in question. That is all that, under the circumstances of this case, it is necessary to find in order to determine how Mr. Pierce voted upon the question of sale or no sale.

Counsel for plaintiff, however, also attempted to show for what party some of the voters cast their ballots by seeking to prove their declarations in that regard. Counsel for the defendants objected to the evidence respecting the declarations upon the ground that the same was incompetent and hearsay. The court excluded the evidence, and counsel for plaintiff insist that the ruling constituted error. The authorities are in hopeless conflict upon the question. No doubt the present state of the authorities is largely due to the fact that the English courts have always held such declarations competent, and many of the legislative bodies of this country have followed the English rule. Many of the American courts, however, have always regarded the English rule with disfavor, and have refused to follow it. Mr. McCrary, in his excellent work on Elections (4th Ed.) sections 483, 484, insists that the "better considered cases" are all against the English rule, and that those cases exclude such declarations as hearsay unless they constitute a part of the res gestae. Mr. McCrary's statement is supported by the following cases: *Gilleland* v. *Schuyler*, 9 Kan. 569-583; *Sharp* v. *McIntire*, 23 Colo. 99, 46 Pac. 115; *Dean* v. *State*, 56 Neb. 301, 76 N. W. 555; *Berry* v. *Hull*, 6 N. M. 643, 30 Pac. 936; *Black* v. *Pate*, 130 Ala. 514, 30 South. 434; *Lauer* v. *Estes*, 120 Cal. 652, 53 Pac. 262; *Hill* v. *Howell*, 70 Wash. 603, 127 Pac. 211. The question is learnedly discussed in the case from Nebraska, and it is there held that if the declarations are part of the *res*

*gestae,* they should be admitted, and that whether they are or are not should be determined by the same rules as that question is determined in other cases where declarations are sought to be introduced as evidence. In *Black* v. *Pate, supra,* the Supreme Court of Alabama, in speaking of the competency of a certain voter's declarations, said:

"His declarations and conduct about the time of and recently before casting his ballot may be proved as tending to establish the facts."

That is, the fact of how he voted. As a matter of course whether certain declarations are or are not a part of the *res gestae,* and admissible as evidence, must be determined, as in other cases, by considering all the evidence relating to the voter's acts and conduct and the time when and the circumstances under which the declarations were made. We feel constrained to hold, therefore, that unless the declarations of the voter are a part of the *res gestae* they are not admissible in evidence in an election contest in which he is not interested as a party. While plaintiff's counsel contend that some of the declarations in this case were part of the *res gestae,* yet in view of the incompleteness of the record, we cannot determine that question. Counsel could not agree at the hearing just what evidence was stricken from the record by the district court and what remained, and we are unable to do so. In view of all the circumstances, therefore, we shall not pass upon the question of whether any declarations that may have been made by any of the voters constituted a part of the *res gestae,* but we leave that question to be determined by the district court in accordance with the principles herein announced. That must be done when all the facts and circumstances are before the court.

Finally, it is contended that the court erred in permitting E. L. Swalberg to file an answer to the contest upon his own behalf, and not as an officer of Gunnison City. Under our statute an elector may file a contest and "any proposition submitted to the vote of the people may be contested." We cannot see why an elector may not also defend in a           7 contest proceeding where, as here, the contest relates to

a question submitted to the people for determination, and where such an elector is a resident and elector of the city or town where such election was held. In this case the city authorities refused to defend, and we cannot see why an elector of the city could not do so on his own behalf. Although he may not be made a party, yet we think that a contest like the one in question is not of that private nature where an elector may not be given leave by the court to file an answer and defend. Counsel have not cited any authorities that such may not be done, and we have found none. We are of the opinion that the court committed no error in permitting Swalberg to defend the proceeding on his own behalf.

In conclusion we desire to state that we have not been unmindful of the contention of defendants' counsel that courts should not, except for good reasons, set aside popular elections, and that the voter's right to refuse to diclose how he voted and to make other disclosures should be carefully guarded and fully protected. A voter whose acts may be called in question is, however, not the only person to be considered; nor is he the only one who should be protected. It is quite enough that a voter who may have been guilty of some infraction of our election law is fully absolved from prosecution and punishment. When that is the case there is absolutely no reason why he should not be required to disclose all matters concerning any acts or conduct, either on his part or on the part of another, that may affect the result of the election. A result that is obtained by criminal misconduct or fraud should not be upheld by any court of justice. Neither can it be assumed that the people either approve of or desire a result thus obtained. In the long run our free institutions and popular governments will suffer much less by granting complete immunity to an offender against our election laws, and by requiring him to make full disclosure of all he knows concerning any criminal misconduct, fraud, or collusion by which a fair and honest result of an election is attempted to be frustrated, where he is not being prosecuted for such offense, than can be gained by shielding the wrongdoer upon the ground that no one may be required to give self-incriminating evidence. The evidence no longer can be said to be incriminat-

ing, since it has lost all its force and effect for that purpose. As a mere prophylactic effect, the former course has many advantages over the latter.

From what has been said it follows that the judgment of the district court of Sanpete county should be, and it accordingly is, reversed, and the cause is remanded to that court, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed. Costs to appellant.

STRAUP, C. J., and McCARTY, J., concur.