## Sokach's Election

*Albert Carrozza* and *R. L. Coughlin*, for appellant.
*Abram Salsburg* and *Merl Mackin*, for respondent.

VALENTINE, J., October 31, 1938.—At the municipal election held in Exeter Borough on November 2, 1937, August J. Lippi and Andrew Sokach were candidates upon the Democratic party ticket for the offices of school director for a six-year term. Michael Fedor and Jerome Walsh were the Republican candidates for said offices. The official returns from said borough for said election showed the votes cast to be as follows:

| | Voting Machine No. | DEMOCRATIC | | REPUBLICAN | |
| --- | --- | --- | --- | --- | --- |
| | | August J. Lippi | Andrew Sokach | Michael Fedor | Jerome Walsh |
| 1st Ward | 19165 | 117 | 118 | 167 | 181 |
| 2d Ward | 19166 | 199 | 209 | 225 | 222 |
| | 20354 | 109 | 114 | 124 | 117 |
| | | 308 | 323 | 349 | 338 |
| 3d Ward | 19167 | 220 | 251 | 200 | 197 |
| | 20355 | 086 | 095 | 107 | 102 |
| | | 306 | 346 | 307 | 299 |
| 4th Ward | 19168 | 164 | 164 | 143 | 143 |
| | 20356 | 254 | 250 | 241 | 240 |
| | | 418 | 414 | 384 | 383 |
| Total vote each received | | 1149 | 1201 | 1207 | 1201 |

Subsequently the court sustained an appeal from the action of the county election board and corrected the return by directing that one vote be stricken from the total number of votes returned as having been cast for Jerome Walsh, which produced the following final results: Andrew Sokach, 1,201; and Jerome Walsh, 1,200.

The controlling questions involved in the contest are (a) whether six persons who voted for the office of school director at said election were legal voters, and (b) if illegal voters, whether they voted for the Republican or Democratic candidates.

All the individuals whose right to vote was challenged were called as witnesses.

John Strako voted in the second ward of the borough. Contestants assert that at the time of the election his residence was in the fourth ward, he having moved from 169 Mason Street in the former ward to 111 Orchard Street in the latter ward. Prior to October 2, 1937, Strako and his wife were living at 169 Mason Street in a house occupied by his wife's grandmother. About October 2, 1937, Strako went to Pittsburgh to seek employment and prior to leaving took his wife to 111 Orchard Street, her parents' home. Their furniture remained in the home on

Mason Street. After an absence of two weeks he returned from Pittsburgh, remained at his mother-in-law's for a week and a half, and then returned to 169 Mason Street where the furniture had remained. At the time he voted he was staying with his mother-in-law, but the controlling question is whether his sojourn there was temporary or was intended to be permanent. The fact that he was then staying at his mother-in-law's does not of itself show that that was his legal residence. Had he procured employment in Pittsburgh, he intended to remove to that city, but did not do so. We do not have a high regard for this witness credibility, but inasmuch as the furniture remained at the Mason Street home and he and his wife returned there shortly after he came from Pittsburgh, we cannot conclude that he was an illegal voter. We recognize the question as a close one, but think the benefit of the doubt should be given to the voter, and that he should not be disfranchised under the facts disclosed by the testimony.

Mrs. Anna Maslosky was an alien and not qualified to vote. She testified that "A fellow by the name of Milunas was with me and he operated the machine and he knows how I voted."

Milunas testified that he had been employed by the Works Progress Administration since 1935. He was asked:

"Q. And for whom did she vote?

A. She voted for Sokach and for what's his name."

The witness then said: "Well, I will have to tell the story from the beginning." He then offered the explanation that at the primaries Mrs. Maslosky expressed the desire to vote for Walsh and Fedor and Patrick Mackin, that he attempted to explain to her that she had to vote for the candidates that were on the Democratic ballot and that when he met her on election day he said to her: "What do you want to do? Do you want to do the same thing?" and she said: "Yes, just as you think."

Milunas lived next door to the polling place. He testified:

"Q. You were at the polls all day, were you not?

A. Off and on. I live right next door. If I spent some time in front of my house I was standing in front of the polls."

He also testified that he always went in and assisted Mrs. Maslosky.

It is true as urged by respondent's counsel that our finding as to what candidates received the votes of the persons not qualified to vote must be supported by the evidence, but it is equally true that such finding may be based upon circumstantial as well as upon direct evidence.

Circumstantial evidence is competent to prove which candidate received the benefit of illegal votes cast at an election: White v. Slama, 89 Neb. 65, 130 N. W. 978.

In The People v. Turpin et al., 49 Colo. 234, 33 L. R. A. (N. S.) 766, at page 244 it is said:

"It is true, if it is not shown that the vote was illegal, the voter cannot be compelled to answer how he voted; but if illegal, in addition to compelling him to answer, other evidence may be received and considered on the subject: *Black v. Pate*, 130 Ala. 514; *Rexroth v. Schein*, 206 Ill. 80; *Welch v. Shumway*, 232 Ill. 85; *Sorenson v. Sorenson*, 189 Ill. 179; *People ex rel. v. Pease*, 27 N. Y. 45; *People ex rel. v. Teague*, 106 N. C. 576."

Moreover an election contest is not to be regarded as litigation between respondent and the opposing candidate. It is instituted by the petition of citizens and qualified electors to determine whether "the voice of the people has been falsely and fraudulently misrepresented": Mann v. Cassidy, 1 Brewster 11, 45.

Mrs. Maslosky concededly voted for two candidates for school director for a six-year term. If Milunas' statement that he voted her for the Republican candidates be not true, the inevitable conclusion must be that her vote

was cast for the two opposing candidates. The appearance, manner, and demeanor of Milunas when upon the witness stand and his active interest in the election satisfies us that he had Mrs. Maslosky vote for the Democratic candidates and that her vote should not be counted for respondent.

Joseph Bonita was born June 19, 1917, and at the time of the election was a minor under 21 years of age. On November 29, 1937, he made an affidavit that he had voted for the Democratic candidates Sokach and Lippi. When called as a witness he repudiated the affidavit and testified that he had voted for the Republican candidates but admitted having written the word "Democratic" in the affidavit, thus signifying that he had a party affiliation with that party. He was unable to state the details connected with his voting. The affidavit was executed at his home and in the presence of his mother after the matters set forth in the affidavit had been fully discussed and he had advised the alderman that he had voted for Sokach and Lippi.

Gerald Clapps was born June 12, 1917, and was 20 years of age at the time of the election. His vote was illegal. On December 15, 1937, he made an affidavit before William Stepulis, justice of the peace, that he had voted for "Andrew Sokach and August J. Lippi, candidates for school director on the Democratic Party ticket". He testified that he signed the affidavit because he was told by Mr. Carrozza (one of the counsel for contestants) "I am after a job for your uncle and he says if you will just sign this paper that means a job for him." Mr. Carrozza denied having made this statement or having been present when Clapps signed the affidavit, and on this feature of the case we have no hesitancy in accepting the testimony of Mr. Carrozza. Clapps thoroughly understood the contents of the affidavit. He made two corrections therein in his own handwriting. However, he testified he voted for the Republican candidates.

Kathryne Serratore was born November 9, 1917, and was an illegal voter at the election in question. On December 15th she made an affidavit before the same justice of the peace that she had voted for Sokach and Lippi for school directors, but when called as a witness testified she had voted for Fedor and Walsh. The testimony of the justice of the peace satisfies us that the witness deliberately executed the affidavit with full knowledge of its contents.

Counsel for respondent have strongly urged that the affidavits executed by these witnesses (Bonita, Clapps, and Serratore) amount to contradictory statements only, and are not to be regarded as establishing the facts set forth therein.

It is true that a contradictory statement made by a witness out of court is competent to affect his credibility, and that a litigant does not meet the burden of proof by establishing that such statement has been made: Scheer v. Melville, 279 Pa. 401; Zavodnick v. A. Rose & Son, 297 Pa. 86; but the present contest is not one between individuals.

In Widmayer v. Davis, 231 Ill. 42, 53, 83 N. E. 87, it appeared that one Edward McKenny was an illegal voter. He testified that he had voted for appellee. The court found that McKenny had voted for appellant and deducted one vote from him on that account. This action was sustained by the appellate court, the court saying, inter alia:

"In addition to what appears upon the record, the trial court saw the witnesses and heard them testify. . . .

"Circumstantial evidence, such as party affiliation, relations with candidates, etc., is always admitted to show how a person voted and is generally sufficient to prove the character of the vote. . . .

"That a witness who is unworthy of belief testifies positively to a fact does not require the court to believe him nor bind the court to find the fact as testified to, when,

from all the other evidence and circumstances proven and from the appearance and demeanor of the witness, the court is satisfied such witness has testified falsely or has been mistaken."

The affidavits made by these witnesses destroyed the value of their testimony. No finding based upon their testimony given in court could, with propriety, be made, and our conclusion as to how they voted must be based upon the facts and circumstances established by the evidence. The appearance and demeanor of these witnesses upon the stand and the manner in which they testified satisfies us that their testimony that they voted for the Republican candidates is untrue, and if their testimony in this respect is untrue, then in view of the fact they admittedly voted for candidates for the office of school directors, they must have voted for the Democratic candidates. So also the surrounding circumstances strongly support this conclusion. Bonita is an employe on a W. P. A. project. Clapps is now employed by the State Highway Department. Miss Serratore has a brother employed under the W. P. A., and both she and Clapps have other relatives employed by or connected with the Democratic administration.

We find as a fact that the testimony of these three witnesses, that they supported the Republican candidates for school director, is false and untrue, and that in reality each of said witnesses voted for the Democratic candidates, and that their votes should not be counted for respondent.

Adele Lippi is a sister of one of the Democratic candidates for school director. On the date of the election she was a minor, having been born August 26, 1917. The illegality of her vote is conceded. She testified:

"A. When I went into the booth, I didn't understand the operation of the voting machine. I knew that before I went in and when I did, I pulled the first lever, the Democratic lever. I assumed that it should drop down straight.

It only went to a certain angle and then would go no farther and I became alarmed and called for my brother Gene, who was at the polls at the time, to come in to assist me. I have a recollection of looking out and seeing this Mr. Frank Kirshnoski. He came in and asked me what was wrong and I told him that the levers would not go down straight. He asked me then if I wanted to vote straight Democratic and I said, yes. He asked me if I wanted to split my ticket and I said, no, and he said, well, pull the red handle when you are finished and your vote will register. Then he went out and as he did, I turned Mr. Frank or rather, Mr. Andrew Sokach's lever up, because I wanted to be sure that I was voting for my brother, August Lippi and then I pulled the red handle and walked out."

Frank Kirshnoski, judge of election of the district in which Miss Lippi voted, testified:

"A. After she went in, she was voting, and, well, naturally she stood there and I would say maybe about a minute or so, and I was kind of checking up on her and then she turned around, she spread her curtain out and I says, what is the matter, and she says, there is something wrong and I went inside the curtain and I says, you are voting straight Democrat, and I says to her, do you want to split your ticket and she says, no, and then I says, get hold of the red lever, the curtain lever and push it back and that is all there is to it.

Q. Did she do that?

A. She done that.

Q. When you went in was the straight Democratic lever pulled or was it in voting position?

A. In voting position.

Q. Then, in your presence, did she attend to the levers after swinging the curtain lever?

A. Yes, I told her to do that and she done that, the red lever, the curtain lever."

The voter is employed in the testing laboratory at Harrisburg under appointment by the Democratic State Ad-

ministration. No reason was given for her alleged change of heart after she had admittedly told the judge of election she was voting "Straight Democrat." We accept the testimony of the judge of election and find that Miss Lippi voted the straight Democratic ticket and that her vote should not be counted for respondent.

We have given this case the careful consideration it merits and have attempted to analyze the conflicting testimony from every possible angle, and are unable to reach any conclusion other than that five illegal votes were cast for respondent and that the correct vote is Sokach 1,196, Walsh 1,200.

We, therefore, declare Walsh to have been duly elected school director of Exeter Borough School District by four votes.

Judge Jones concurs in this opinion.